THE JEWISH CONSUMPTIVES' RELIEF SOCIETY, Appellant, v. TOWN OF WOODBURY and Others, Respondents.

Second Department, June 23, 1930.

*Edward M. Bassett* [*Martin H. Latner* with him on the brief], for the appellant.

*William D. Cunningham* [*Percy V. D. Gott* with him on the brief], for the respondents.

*George W. Davis, Assistant Attorney-General* [*Hamilton Ward, Attorney-General,* and *Borden H. Mills, Deputy Assistant Attorney-General,* with him on the brief], for the State Department of Health and the State Board of Charities, *amicus curiæ.*

LAZANSKY, P. J. Plaintiff is a foreign membership corporation, organized under the laws of the State of Colorado in the year 1904 for the purpose of maintaining a tuberculosis home and hospital in that State. In or about April, 1928, plaintiff filed in the office of the Secretary of State a statement and designation, provided for by section 15 of the General Corporation Law, which had theretofore been approved by the State Board of Charities and by a justice of the Supreme Court, and on April 21, 1928, the Secretary of State issued to the plaintiff a certificate of authority to do business in this State. This was done pursuant to amendment to the General Corporation Law (Laws of 1927, chap. 425) which, in effect, placed a foreign membership corporation upon the same basis as a domestic membership corporation. In this way were opened the gates of the fields of philanthropic endeavor in this State for the gratuitous entry of membership corporations of sister States.

The plaintiff has at Denver, Colo., 150 acres of land, with forty buildings thereon worth $1,250,000, an institution with a normal capacity for 400 patients. For the past fifteen years or more upwards of fifty per cent of its patients have come from the city of New York. Because it wished to extend its work and

because it is deemed unwise to remove patients from the seashore to high altitudes, it decided to establish a plant in the State of New York. There is no question that it complied with all the requirements of law in so far as its presence in this State is concerned, and also obtained the necessary consents for the establishment of its sanatorium in the town of Woodbury except, as claimed, in one particular.

As certain provisions of law play an important part in the decision of this case, it will be necessary to refer to the statutes. Sections 319 to 334 of the Public Health Law deal with tuberculosis, looking toward its cure and the prevention of its spread. By section 320 tuberculosis is declared to be an *infectious and communicable disease, dangerous to the public health.* Then follow sections with reference to the duty of physicians and other persons to report the existence of tuberculosis in any patient, the examination of sputum, protection of records, disinfection of premises under the direction of health officers, prohibiting occupancy of premises until orders of health officers have been complied with, prohibiting carelessness of persons having tuberculosis, control of dangerous and careless patients, protection of patient's family, penalty for failure of physician to perform duties or for making false reports, reporting recovery of patients, etc. It thus appears that the State recognized the existence of this disease as a menace to persons and communities, and has sought to provide safeguards against it. Section 319 of the Public Health Law (Laws of 1909, chap. 171; Laws of 1916, chap. 291; Laws of 1919, chap. 421; Laws of 1923, chap. 510; Laws of 1926, chap. 186) provides in part, at the beginning thereof: " A hospital, camp or other establishment for the treatment of patients suffering from the disease commonly known as pulmonary tuberculosis, shall not be *established in any town* by any person, association, corporation or municipality except when authorized as provided by this section." When it is proposed to establish such a hospital, those interested in so doing must file with the State Commissioner of Health a petition describing the character thereof, stating the county and town in which it is to be located and describing the *site* in such town for such proposed hospital, and requesting the Commissioner to fix a date and place for a hearing on such petition before the State Commissioner of Health and the local health officer, *who shall constitute a board to approve or disapprove the establishment of such hospital.* The Commissioner of Health fixes a date and place for a hearing and gives notice thereof to the persons interested in the proposed institution and to the health officer and to each member of the board of health of the town in which it is proposed to establish the hospital. At

the time and place fixed for the hearing, the State Commissioner of Health and the local health officer hear the petitioner and any other person and, if they agree, they either approve or disapprove of the *location* and notify the persons interested in the proposed institution of their determination. The determination of the State Commissioner of Health and the local health officer are final and conclusive. It should be observed that this section refers to the State Commissioner of Health and the local health officer as a board *to approve or disapprove the establishment of such hospital,* and to approve or disapprove *the location.* In the event that they do not agree, the persons interested in the proposed institution may file in the office of the State Commissioner of Health a request that the petition be referred to a board consisting of the Lieutenant-Governor, the Speaker of the Assembly and the State Commissioner of Health, and such officers approve or disapprove of the *proposed location* of such institution. In the case at bar the State Commissioner of Health and the local health officer disagreed, and a petition was presented to the designated State officers, who, by a vote of two to one, on June 25, 1928, voted " that the petition presented by The Jewish Consumptives' Relief Society be approved, and permission is hereby granted to said society to establish a hospital for the treatment of tuberculosis on the site described in their petition, in the Town of Woodbury, Orange County, N. Y., *but upon the condition that said permission shall not be effective if the establishment of said hospital at such site is prohibited by any statute of this State or valid town ordinance.*"

Thus, on the face of things, plaintiff was ready to proceed with its arrangements for the development of its plans. On July 3, 1928, plaintiff took title to the premises in question in the town of Woodbury. The town of Woodbury is in the southeastern part of Orange county, and on the west it adjoins the town of Tuxedo and the town of Monroe, and on the east the town of Highland and the town of Cornwall, and approximately on the north the town of Blooming Grove. It is not far from Goshen and Newburgh. While these proceedings were going on against the opposition of the town, the town was planning in another way to halt the activities of plaintiff. Without at all questioning the humanitarian attitude of the town, there is no doubt, as stated by the trial justice, that this institution was not wanted in the town of Woodbury. That is understandable.

Article 17-C of the Town Law (§§ 349-o–349-w), which came into effect in its present form by Laws of 1926, chapter 714, is headed, " The Regulation by Districts of the Height, Bulk and Use of Buildings and Lands and the Density of Population." Section 349-o of

the Town Law provides: " For the purpose of promoting the health, safety, morals, or the geneial welfare of the community, the town board is hereby empowered by ordinance to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes; provided that such regulations shall apply to and affect only such part of a town as is outside the limits of any incoiporated village or city.  Such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained."

Section 349-p provides for districts best suited to carry out the purposes of the act, and within such districts the town *may regulate and restrict* the erection, construction, reconstruction, alteration or *use of buildings*, structures *or land.*

The purposes in view are stated in section 349-q as follows: " Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements.  Such regulations shall be made with ieasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

In the zoning regulations of the Town Law there is nothing said about hospitals of any kind.  No reference to hospitals is found in the Town Law.  Under section 472 (as amd. by Laws of 1917, chap. 597) the town has power to provide ordinances of various kinds, including ordinances for the protection of property, the preservation of peace and good order, *the preservation of  health*, etc., but no ordinance giving control over or regulating hospitals of any kind.

Acting under the said zoning laws contained in the Town Law, defendants, following the procedure required by the Town Law, which is not questioned here, adopted ordinances on April 16, 1928.  By these ordinances, which are zoning ordinances, the town was divided into five districts.  Section 6 of these zoning ordinances provides: " Hospitals, sanatoria and correctional insti-

tutions. No hospitals or sanatoria for the treatment of either contagious or non-contagious diseases, dispensaries or correctional institutions shall be established, built, or maintained in either District No. 1 or District No. 2 or District No. 3 or District No. 4, and no hospitals for the treatment of contagious diseases or tuberculosis shall be established, built or maintained in District No. 5." It thus appears that this ordinance excludes an institution for the treatment of tuberculosis from all of the districts of the town.

Plaintiff seeks to enjoin the enforcement of the ordinance, claiming it is void upon the ground that it is violative of a State policy plainly indicated, and that, in the absence of any express power given to the town, it may not by ordinance prohibit that which the State says may be done. With reference to this argument, the respondents say: " Of course, if the zoning ordinance is void for some inherent reason, because violative of, or *ultra* the provisions of the zoning law * * *, then the inquiry ends right there adversely to us."

The question to be answered is this: Does the town zoning statute override the Public Health Law provisions in whole or in part? The State has declared that tuberculosis institutions may be established in towns. Do the zoning laws permit the town to prohibit that which the Public Health Law permits? The State has declared a policy by virtue of the Public Health Law. Have the zoning laws worked a repeal thereof so far as towns are concerned? The trial court has held in the affirmative.

Section 319 of the Public Health Law, quoted above in part, and which has to do with the establishment of hospitals for the treatment of pulmonary tuberculosis, was derived from the Public Health Law of 1893, section 218-a, as added by section 1 of chapter 638 of the Laws of 1903. The section as added then read as follows: " A hospital * * * for the treatment of patients suffering from the disease known as pulmonary tuberculosis, shall not be established in any town by any person, association, corporation or municipality, unless the board of supervisors of the county, and the town board of the town, shall each adopt a resolution authorizing the establishment thereof, and describing the limits of the locality in which the same may be established."

It thus appears that the control of the establishment of such institutions was formerly left to the town authorities, who, acting with reason, had the authority to refuse permission for the establishment of such an institution. Aside from any other considerations, this law shows that the State intended that there should be such establishments in the State, but left it to the good sense and sound judgment of each town to determine, based upon lawful reason,

whether or not they should have such an institution. While nothing has been submitted which would indicate the cause thereof, undoubtedly the Legislature came to the conclusion that it would be better for the State to control the establishment of these institutions, subject to recognition of the voice of the town through its health officer, instead of giving the town full power in this important matter. Thus came into existence section 319 of the Public Health Law, as now constituted. It very clearly appears from these provisions of the Public Health Law that the State of New York has decreed that there may be such establishments in the towns of the State. It has been suggested that section 319 of the Public Health Law deals only with the site to be selected, but its context shows that a basic consideration is the establishment of such institutions in the towns. Do the laws which authorize the town to enact zoning ordinances abrogate the Public Health Law? Under section 2 of the Town Law, a town is a municipal corporation comprising the inhabitants within its boundaries, and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as have been, or may be conferred, or imposed upon it by law. The towns of the State of New York have only such powers as are conferred by statute. (*Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318.) The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit. (*People ex rel. Kieley* v. *Lent*, 166 App. Div. 550; aff'd., 215 N. Y. 626; *Mills* v. *Sweeney*, 219 id. 213; *People* v. *Gilbert*, 68 Misc. 48; *Law* v. *Spartanburg*, 148 S. C. 229; *Schieffelin* v. *Dolan*, 204 App. Div. 351; 43 C. J. 215–218.) The power to adopt zoning regulations under article 17-C of the Town Law is a general grant of power for the purpose of promoting the health, safety and morals or the general welfare of the community, and permitting ordinances to regulate and restrict, among other things, the location and use of buildings, structures and land for trade, industry, residence or other purposes. It does not override the general law in so far as tuberculosis is concerned. A public policy so clearly stated by the Legislature may not be lightly thrust aside. Even if this power to restrict could be construed to cover a particular use which is authorized by general law, such construction will not be made in the absence of express words to that effect or in the use of language which clearly and unequivocally shows an intent of the Legislature to have it made.

Upon this basis, the town of Woodbury had no authority by

ordinance to prohibit an establishment for the care of those afflicted with tuberculosis. While this ordinance does not in terms so prohibit, that is the effect of it. There is no dispute between the parties as to that. The court so found. If the Public Health Law dealt only with " establishment " and the town had passed an ordinance which limited the place where such institution might be erected within its boundaries, then, if such limitation were for the benefit of the health, morals and welfare of the people, there could be no question about it. But here there is an unqualified prohibition.

In *Cronin* v. *People* (82 N. Y. 318) a power was conferred upon the city of Albany, by its charter, to " regulate the erection, use, and continuance of slaughterhouses " within the city. It was held that this included the power of prohibition within specified limits or localities. There is an intimation in the case that the time may come when, under this power to regulate, the city would have the authority to prohibit entirely. The court said: " It will be soon enough to decide that question when it arises." But there was no conflict between State legislation and ordinances. There was no statute on the subject except the act which expressly authorized local regulation of a particular subject, which the court held under certain circumstances might include prohibition. In *People ex rel. O. H. C. Assn.* v. *Pratt* (129 N. Y. 68) the common council under its charter had power to make, modify and repeal ordinances and by-laws to regulate the burial of the dead, among other purposes, as it shall deem reasonable within the city. The court said: " Under the power to regulate, the common council could prohibit the burial of the dead within the city limits. (*Cronin* v. *People*, 82 N. Y. 318.) " The court further stated that the ordinance was a police regulation which the Legislature could authorize the common council to pass. Here again, however, there is no conflict with any statute. While there is the common-law right to bury the dead, and under section 10 of the Membership Corporations Law (as amd. by Laws of 1926, chap. 722) five or more persons may become a cemetery corporation, there is no express provision with reference to burials in the general law. Section 73 of the Membership Corporations Law (as amd. by Laws of 1926, chap. 722) provides that a cemetery corporation shall not take by deed, devise or otherwise any land in the counties of Kings, Queens, Rockland, Westchester, Nassau, Suffolk or Erie for cemetery purposes, unless the consent of the board of supervisors therefor, or the board of aldermen of the city of New York, as the case may be, be first obtained. There is no provision in the general law which otherwise regulates the places for cemeteries. Therefore, when a charter is granted to a

political unit with power to regulate cemeteries, the unit may have the power to prohibit if conditions in the unit require it. If because of crowded conditions the health and the welfare of the people of a city will be impaired, then an ordinance so prohibiting might be valid. But that is because there has been an express grant from the State to the locality. The State has declared, in effect, a policy that cemeteries should be permitted, and has specifically provided for their regulation by certain municipalities or other political units. Of course, if the State adopts a valid law upon a given subject, and the Legislature sees fit to give the municipality a power to the contrary, the latter supersedes the former. This is not such a case, because the power to enact ordinances for the benefit of the public health and these zoning regulations, cannot be said to be in abrogation of the State's policy as indicated by the Public Health Law. It must be borne in mind that an ordinance has the same force as legislation (*Village of Carthage* v. *Frederick*, 122 N. Y. 268), and it requires clear language in a city charter or in the act giving powers to a town indicative of an intent to repeal the general law, before such an intent will be inferred. Where the State has given power to regulate in the cases above mentioned, it can only be where the safety, welfare or necessary comfort of society requires such regulation, but the power must be first in sight before there may be regulation.

Greater power has specifically been given to villages under the Village Law, of which section 343 provides: " A building or tent in a village shall not be used, occupied or maintained as a hospital or pest-house for the reception and care of public or private patients without the consent of the board of health of such village."

The only real reason indicated in the findings which would justify the exercise of the power under this ordinance, if it were valid, is that the erection of this plant would cause the town of Woodbury to become widely and distinctly known as a tuberculosis health center, and the character thereof as a high-class residence locality and town to be destroyed, and the demand for real property throughout the town and locality for country homes, high-class residences and estates would be destroyed in whole or diminished greatly and real estate values and the value of buildings generally therein seriously damaged. Nothing has been found with reference to the effect upon the health, morals and general welfare of the community. The Town Law provides that in enacting ordinances for zoning, consideration for the conserving of the value of buildings might be had, as well as the appropriate use of land. Giving to this ordinance, if it were valid, the force of legislation by virtue of

the Town Law, there may be doubt whether, solely for the reason stated, such an ordinance is within constitutional limitation.

In *People ex rel. Sprenger* v. *Dept. of Health* (226 N. Y. 209) the court say: " The question of legislative power wholly to exclude hospitals, such as hospitals for contagious diseases or for the treatment of inebriates or the insane, from particular places, such as thickly populated or fine residential districts, is not before the court." In that case it was held that the authority of the board of health, which has general jurisdiction over the establishment and maintenance of hospitals, including the licensing of hospitals, does not include, expressly or by reasonable implication, the power to refuse a permit to conduct a private hospital, when all other conditions are satisfactory and no offense to the senses is suggested, for the exclusive reason that " ' considerable damage would accrue to the surrounding property if the permit were granted.' " However, in the case at bar, zoning regulations permit that consideration, but yet it is an open question whether the Legislature may so provide.

The holding that the town may not prohibit does not dispose of the entire question. Under the zoning regulations adopted by the town pursuant to article 17-C of the Town Law, plaintiff's property is in districts 1 and 5. The use in district 5 is not limited except as discussed above. There is no difficulty with that. The use in district 1 has been limited to residences. The conclusion that the town has no power to prohibit does not necessarily mean that it has no right to regulate and restrict. Has the town the authority to exclude plaintiff's proposed sanatorium from district No. 1? The Public Health Law grants authority to the officials mentioned therein to approve (1) establishment, and (2) location. That the word " location " is used synonymously with " site " is indicated in the act. It might be urged that the right to regulate and restrict, if the regulations are fair and reasonable, is consistent with the provisions of the Public Health Law. In other words, although the town has no right to exclude such institutions, it has the power to limit the places in which such institutions may be established; and that when the officials named in the Public Health Law locate, such location must be in accordance with the zoning regulations, provided the latter are reasonable and for the welfare of the town. If this argument were sound, then the town would have the power to exclude plaintiff from district No. 1. However, in the face of the specific grant to State authorities under the Public Health Law, it should not be held that the general grant under the Town Law is sufficient to give the town power to exclude such institutions from any part of the town. (*People*

v. *New York Central & H. R. R. R. Co.*, 159 App. Div. 329.) The towns had no such power immediately before the town zoning statute was enacted. In the absence of clear expression of intent on the part of the Legislature so to do, it should not be held that the Public Health Law was even to this extent repealed or modified. Furthermore, as pointed out above, the towns once had the power to determine whether or not such an institution might be established therein. That power was taken away in 1909, except to the extent that the health officer of the town was, with the State Commissioner of Health, constituted a board for the purpose. That action on the part of the Legislature should not be held to have been changed by a law which makes provision in general terms for zoning regulations. The phrase at the end of the determination of the State board, " but upon the condition that said permission shall not be effective if the establishment of said hospital at such site is prohibited by any statute of this State or valid town ordinance," is surplusage. There is no such statute; there is no such valid ordinance.

The judgment should be reversed upon the law, without costs, and judgment directed for plaintiff for the relief demanded in the complaint, without costs.

KAPPER, CARSWELL and TOMPKINS, JJ., concur; YOUNG, J., dissents and votes for affirmance upon the following grounds: The power of the town to regulate and restrict, pursuant to article 17-C of the Town Law, is plain; but it is held that the town is without power to prohibit a sanatorium. The certificate of approval was given upon the condition that it should not be effective if the establishment of the hospital at the site approved is prohibited by any statute of the State or valid town ordinance. The Public Health Law, section 320, declares that tuberculosis is an infectious and communicable disease, dangerous to the public health. Under such circumstances, I think the town had the right, by zoning ordinance, to exclude all tubercular hospitals from its limits as menacing public health, and is, therefore, within the grant of power given to the town by section 349-o of the Town Law.

Judgment reversed upon the law, without costs, and judgment directed for plaintiff for the relief demanded in the complaint, without costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.