DONALD G. HAYWARD, as Administrator, etc., of LUELLA HAYWARD McLEAN, Deceased, Respondent, v. CITY OF SCHENECTADY, Appellant.

Third Department, July 2, 1937.

*Thomas W. Wallace, Corporation Counsel [Arlen T. St. Louis, First Assistant Corporation Counsel, of counsel], for the appellant.*

*Leary & Fullerton [Walter A. Fullerton, Francis J. Neddo and Charles W. Aussicker of counsel], for the respondent.*

McNAMEE, J. Belmont avenue was one of the public streets of the city of Schenectady, running east and west. A sidewalk was located on and along the most southerly portion of the street, and the southerly five feet of the walk was paved; and between this pavement and the southerly curb of the driveway was a strip of seeded ground about three and one-half feet wide. Close to the curb in the seeded part, a shut-off water valve was located, which extended about five or six inches above the surface. About ten-thirty o'clock in the evening of May 10, 1935, the deceased was going from the home of a friend, where she had been calling, to reach her car which stood in the street, and while passing over this seeded portion of the sidewalk, she tripped on the protruding valve, fell, and was injured.

It is not questioned here that notice of claim was served on the city, pursuant to and in conformity with the provisions of section 244 of the Second Class Cities Law. The defendant resisted, in the main, on the ground that there was in force in the city of Schenectady at the time of the accident, a local law adopted by the common council pursuant to the Home Rule Amendment of the State Constitution (Art. 12), and the City Home Rule Law (Laws of 1924, chap. 363), which relieved the city of liability when no written notice of the defect had been served prior to the accident. At the close of plaintiff's case and again at the close

of the whole case, after timely motion to dismiss on the part of the corporation counsel, the trial court held that the local law, in so far as it applied to this class of cases, was invalid. That ruling presents the chief question on this appeal.

Both the Constitution and the legislative act contain language authorizing the city to adopt local laws in relation to " the presentation, ascertainment and discharge of claims against it, the acquisition, care, management and use of its streets and property; " and it is this provision upon which the appellant relies particularly, as authority for the measure. The question then is whether the city had power to adopt the local law assailed by the respondent.

In so far as important here, section 3 of article 12 of the State Constitution provides: " Every city shall have power to adopt and amend local laws not inconsistent with the Constitution and laws of the State, relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, the acquisition, care, management and use of its streets and property, * * *. The Legislature shall * * * provide by general law for carrying into effect the provisions of this section." And section 7 of that article provides, in so far as of interest in this case: " The provisions of this article shall not affect any existing provision of law; but all existing charters and other laws shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this article."

In pursuance of the constitutional authority thus conferred, the Legislature passed the City Home Rule Law; and subdivision 1 of section 11 thereof, as amended, provides, in so far as useful here, as follows:

" 11. Powers of cities to adopt and amend local laws. 1. * * * the local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of a city including but not limited to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, the acquisition, care, management and use of its streets and property, * * * the government and regulation of the conduct of its inhabitants and the protection of their property, safety or health."

Subdivision 2 of section 12 of that statute contains restrictions, and provides in part, that "No local law shall supersede any provision of an act of the Legislature relating to the property, affairs or government of cities which provision in terms and in effect applies alike to all cities, nor any provision of an act of the Legislature which provision relates to matters *other* than the property, affairs or government of cities, whether in terms and in effect applying alike to all cities or not."

Section 244 of the Second Class Cities Law applies to the defendant city, and provides, that no civil action shall be maintained against the city on account of injuries to person or property, due to a defective or unsafe condition of a sidewalk, unless it appears that written notice of such condition "was actually given to the commissioner of public works, and that there was a failure or neglect within a reasonable time after the giving of such notice to repair, or remove the defect, * * * *or, in the absence of such notice, unless it appears that such defective, unsafe, dangerous or obstructed condition existed for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence.*"

Upon the authority assumed to have been conferred upon the city by the constitutional provisions and legislative acts mentioned, the defendant city passed the local law in question, in substantially the same language and to the same effect as section 244 above mentioned, with the exception that there was omitted from the local law the provision touching the application of the doctrine of constructive notice, as set forth in italics in the paragraph herein next above.

It will be observed that the constitutional grant of power to the Legislature (Art. 12, § 3) is limited to enactments authorizing local laws touching city officers and employees, the transaction of the city business, incurring of city obligations, claims against the city, and the acquisition, care, management, and use of city streets and property. And it is seen also that the legislative act (§ 11, subd. 1) restricted the city's authority to the passage of local laws relative to the "property, affairs or government" of the city, and to the other particulars of authority enumerated in the Constitution almost *in ipsissimis verbis.* No provision is found in the fundamental law, nor was any adopted in the legislative acts, which purports to relieve the city of the duty of proper care of the streets, or of the duty of keeping them reasonably safe for use by the public. Neither is there any such provision relieving the city of the consequences of its own negligence, or enabling it to wipe out its common law and statutory obligation to respond in damages on account of its negligent care of the streets, when

constructive notice has been established. Nor is there any grant of power authorizing the city to limit or determine the rights of the public to recover in such cases for injuries due to its neglect. (*Browne* v. *City of New York*, 241 N. Y. 96.)

As we have seen, the Constitution continues in force " existing charters and other laws," until superseded " in accordance with the provisions of this article " (Art. 12, § 7). The State statute of State-wide application to cities of the second class (§ 244), expressly makes applicable to the defendant the doctrine of constructive notice when the necessary facts shall have been proved; and by express enactment, the City Home Rule Law inhibits the supersedence of a local law when the Legislature has acted with reference to matters affecting all cities, or with reference to " matters *other* than the property, affairs or government of cities, whether in terms and in effect applying alike to all cities or not " (§ 12, subd. 2). Despite these limitations, restrictions and inhibitions, the defendant adopted the local law in question, and thereby, in form, rendered not applicable to itself the common-law rule of constructive notice, and deprived injured members of the public of the benefits of that doctrine, which by statute the Legislature had made binding on all second class cities throughout the State. Neither the Constitution nor the statute granted such a power; on the contrary, the statute affirmatively withheld the authority to enact such a law. Accordingly, that part of the local law which thus contravenes the Constitution and the statute is void.

We have examined the record touching the character and extent of decedent's injuries, and the amount of the verdict. The jury could have found from the evidence that plaintiff's intestate suffered fractures of the elbow joint and of the head of the radius, injuries to the breast and shoulder, besides various cuts and contusions, and that she is left with a substantial limitation in the use of her arm, which interferes with the care of her person. The verdict should not be disturbed.

The judgment and order should be affirmed, with costs.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Judgment and order affirmed, with costs.