ELSIE S. FULLERTON, Respondent, *v.* CITY OF SCHENECTADY, Appellant.

WALTER A. FULLERTON, JR., Respondent, *v.* CITY OF SCHENECTADY, Appellant.

Third Department, March 16, 1955.

*Charles Ward Brown, Corporation Counsel,* for appellant.

*James A. Leary, Walter A. Fullerton, Charles W. Aussicker, William L. Ford* and *Francis J. Keehan* for respondents.

*Donald A. Walsh* for New York State Conference of Mayors, *amicus curiæ.*

Foster, P. J. Respondents have judgments against the City of Schenectady for personal injuries and derivative damages, arising from a fall of the respondent Elsie S. Fullerton, which was caused by a defective sidewalk. As to the issues of negligence and contributory negligence we would without hesitation affirm the findings of the jury. The difficulty in these cases arises from a local law, adopted by the City of Schenectady on May 4, 1935 (Local Laws, 1935, No. 6 of City of Schenectady), which requires written notice of a defective sidewalk to be given to the commissioner of public works at least twenty-four hours previous to the accident as a prerequisite to the maintenance of any action against the city for damages. Concededly no such notice was given by either of the respondents in this case, nor does the complaint allege that a written notice was given by anyone else, and hence if the local law was valid at the time the respondents have no case. The question was properly raised by a motion to dismiss the complaint on that ground during the course of the trial.

This court, in 1937, held that the very local law in question was invalid (*Hayward* v. *City of Schenectady,* 251 App. Div. 607). As a matter of course the trial court in this case followed that decision and held in effect that constructive notice of the alleged defective condition in the sidewalk was sufficient under section 244 of the Second Class Cities Law.

The rationale of the decision in the *Hayward* case was briefly: That the Schenectady local law was inconsistent with section 244 of the Second Class Cities Law; that this statute was of general application to all cities of the second class, and hence beyond the power of supersession by any local law under the Constitution and statutes as they then existed. As we examine the proposition again it seems to us that the court in deciding the *Hayward* case overlooked the basic application of the Second Class Cities Law as defined in the enactment itself. The language of the act is specific: " § 4. Application of chapter. A provision of this chapter shall apply, according to its term, only to a city of the state which on the thirty-first day of December, nineteen hundred and twenty-three, was a city of the second class, *until such provision is superseded pursuant to the city home*

*rule law* or otherwise changed, repealed or superseded pursuant to law." (Emphasis supplied.)

Whatever may have been the purpose of continuing the Second Class Cities Law it seems clear from the foregoing language that the Legislature did not intend to put any of its provisions beyond supersession by city home rule. Under such circumstances to say that the Schenectady local law was inconsistent therewith amounts to a contradiction in terms. The only logical argument that could have been used to condemn the local law was to say that it was beyond the constitutional power of the Legislature to delegate to a city of the second class the right to supersede provisions of a statute that applied to it. An examination of the Constitution as it then existed discloses no such prohibition.

Section 3 of article XII of the State Constitution, in effect at the time the local law was enacted, provided in part: " Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to * * * the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, the acquisition, *care, management and use of its streets* and property ". (Emphasis supplied.)

That section conferred rather broad powers on the Legislature to enact city home rule legislation. I see nothing in it that attempts to preserve the doctrine of constructive notice in sidewalk cases, or anything that restricts the legislative power to permit the abolition of such a rule by city home rule legislation. It seems rather obvious that the liability of any city, where it may exist in cases of this character, arises from the " care, management and use of its streets ", and the inclusion of these words in the constitutional section quoted carry by clear implication the power to determine by local law what type of notice may be required as a prerequisite to liability in such cases. This power was limited only by the requirement that it should not be exercised inconsistently with the Constitution and laws of the State. Certainly its exercise with regard to second class cities was not repugnant to the Constitution, and it was not inconsistent with the Second Class Cities Law because, as I have already indicated, that statute specifically permitted the supersession of any of its provisions by local laws. For these reasons I think the Schenectady local law was constitutional at the time the *Hayward* case was decided and that such decision should no longer be followed.

Passing to the City Home Rule Law (§ 11, subd. 1) as it existed at the time (L. 1924, ch. 363, as amd. by L. 1928, ch. 670),

it may be noted that its language followed that of the constitutional provision in almost identical words. Hence there is no persuasive reason to assert that the local law violated any legislative enactment.

In 1938 the constitutional provision dealing with home rule legislation (art. IX, § 12) was considerably enlarged and the City Home Rule Law was correspondingly expanded. (L. 1939, ch. 867.) In my judgment, however, it is not necessary to rely upon these later amendments or to attempt the avoidance of any conflict with the saving clause of the present City Home Rule Law contained in section 36 thereof. I am constrained, therefore, to place this decision on the basis that the local law in question was valid under the Constitution and statutes as they existed at the time it was enacted.

I readily agree that local laws of the character involved here are in reality attempts to bar tort actions under the guise of a procedural requirement, and that they put upon many deserving litigants an impossible burden. However, it is too late in the day to urge this consideration as decisive. This matter was debated and determined long ago. (*MacMullen* v. *City of Middletown*, 187 N. Y. 37.) We, therefore, deal only with a question of legislative power, and whether the Schenectady law is reasonable or unreasonable is of little moment. Section 8 of the Court of Claims Act, under which the State has waived its sovereign immunity, in nowise alters the situation. That waiver merely applies to areas where before its enactment a defense of sovereign immunity might have been interposed. In any event the decision in *Ellis* v. *City of Geneva* (259 App. Div. 502, affd. 288 N. Y. 478) is decisive against any such claim. That case held the local law of a third class city, similar to the one involved here, was constitutional and not subversive of any fundamental law of the State. If the waiver provision of the Court of Claims Act were applicable at all so far as notice is concerned, it would have been applied to all cities irrespective of their class.

The judgments should be reversed and the complaints dismissed.

Coon, J. (dissenting). We are all in accord that these judgments should be affirmed were it not for the failure to allege and prove compliance by the plaintiffs with Local Law No. 6 of 1935 of the City of Schenectady which requires, as a condition precedent to liability for sidewalk injuries, that written notice of the place and nature of the defective sidewalk be given

to the commissioner of public works at least twenty-four hours before the injuries are sustained.

I think Local Law No. 6 is unavailable to the city as a defense to these actions. Local Law No. 6, the identical enactment here under consideration, has been held invalid and void by this court. (*Hayward* v. *City of Schenectady,* 251 App. Div. 607.) That decision has never been reversed, overruled or superseded. The court below was bound by it and undoubtedly relied upon it. Presumably the City of Schenectady and other cities have disposed of an unknown volume of sidewalk litigation without asserting, until now, the power of a city to impose the requirement of advance written notice. In the interests of certainty, stability and predictability of the law, this court should be bound to adhere to that decision under the principle of *stare decisis.*

Moreover, Local Law No. 6, by its terms and its effective results, goes beyond the power of the local legislative body to enact. I cannot accept the delusion that it deals with a procedural matter, or that it has anything to do with the notice, presentation, ascertainment or discharge of claims against the city. By its terms it imposes a condition precedent to liability before there is any claim. This local law must be faced head-on for what it patently is, a change in the fundamental law of the State and a limitation of primary liability for certain torts, and, in most cases, an absolute immunity from liability for certain torts, for which others, under a like situation, are liable.

I find nothing in the Constitution of the State of New York or in the City Home Rule Law as they existed when this local law was enacted in 1935, or, for that matter, as they are presently worded, which authorizes or empowers the local legislative body of a city to thus change the fundamental law of liability for torts. It is not a matter of purely local concern, arising out of conditions peculiar to and limited to the City of Schenectady.

Granted that the city had the power to amend or supersede the Second Class Cities Law, it had such power only with respect to the matters enumerated in the State Constitution and the City Home Rule Law. Section 3 of article XII of the Constitution, in effect at the time, authorized the enactment of local laws not inconsistent with the Constitution and laws of the State relating to " the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, the acquisition, care, management and use of its streets and property ". Subdivision 1 of section 11 of the City Home Rule Law used the same language except that

the Legislature significantly omitted "the incurring of its obligations".

There is not found in those provisions any such words as "its liability for defective maintenance of its streets or property" or any words of similar import. If such drastic power were intended surely it would not have been hidden in the words "acquisition, care, management and use", especially when those words apply equally to "its streets and *property*". If the city had the power to enact this local law it had the power to legislate, as a condition precedent to liability, the requirement of an advance written notice of any dangerous defects in its buildings, vehicles and equipment, without regard to its actual knowledge of the defects. If it lacks the power for the latter it lacks the power for the former.

Given their ordinary and accepted meaning, I cannot construe the words "acquisition, care, management and use" as conveying any power beyond the necessary legislation to acquire and own the streets and regulate the use of them by the public and to prevent their misuse. "The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit." (*Jewish Consumptives' Relief Soc.* v. *Town of Woodbury,* 230 App. Div. 228, 234, affd. 256 N. Y. 619; see, also, *Matter of Kress & Co.* v. *Department of Health,* 283 N. Y. 55.)

To be valid a local law must "have a substantial relation to matters within the field where legislative power is vested in the local legislative body of the city by the Constitution and statutes of New York. They must be reasonably calculated to achieve a legitimate public purpose." (*Good Humor Corp.* v. *City of New York,* 290 N. Y. 312, 317.) The same case holds that the object of the local law must be an object which the city has the constitutional power to make effective. I do not think that anyone will assert, except with tongue in cheek, that the object of the local law here under consideration is other than to reduce the liability of the city for sidewalk accidents and to fix a standard of liability different from that prevailing in the State as a whole.

It would seem to need little to demonstrate that this local law does in effect offend the fundamental law of liability for torts. It not only abolishes the rule of constructive notice, it removes from consideration actual notice and actual knowledge, no matter how long standing. Though all the officers of the city

admitted long-standing actual knowledge of the precise danger-
ous condition and long-standing opportunity to repair, liability
is still dependent upon a written notice to a particular official.
Thus the *only* accomplishment of the local law in such a case
is to immunize the city from liability. I venture that no one
would contend that a city has the power to enact a local law
providing that it " should not be liable for the negligence of
its officers, agents or employees in relation to its streets." If
that cannot be done directly it cannot be done indirectly under
the cover of any guise or subterfuge.

This local law is inconsistent with the public policy of the
State and with section 8 of the Court of Claims Act, which has
been held to apply to all cities. (*Bernardine* v. *City of New
York,* 294 N. Y. 361.) Though the main purpose of section 8
was to waive sovereign immunity, after expressly doing so, it
goes further and expressly " consents to have the same deter-
mined in accordance with the same rules of law as applied to
actions in the supreme court against individuals or corpora-
tions ". The Court of Appeals has said " we were brought all
the way round to a point where the civil divisions of the State
are answerable equally with individuals and private corpora-
tions for wrongs of officers and employees ". (*Bernardine* v.
*City of New York, supra,* p. 365.) If Local Law No. 6 is valid
the liability of the City of Schenectady differs substantially
from the liability of the State, many civil divisions of the State,
and all individuals and private corporations, and sidewalk claims
against it may *not* be " determined in accordance with the same
rules of law as applied to actions in the supreme court against
individuals or private corporations."

*MacMullen* v. *City of Middletown* (187 N. Y. 37) does not help
us, because it involves the power of the State Legislature, not
the power of a city legislative body — an entirely different
matter.

I do not regard *Ellis* v. *City of Geneva* (288 N. Y. 478) as
controlling. The local law there involved was not as far-reaching
as this one. In that case several grounds were urged for dis-
missal of the complaint, and it was dismissed. The Court of
Appeals affirmed without opinion, and it may be regarded only
as an affirmance of the result in that particular case.

I think the judgments should be affirmed.

BERGAN and IMRIE, JJ., concur with FOSTER, P. J.; COON, J.,
dissents, in an opinion in which Zeller, J., concurs.

Judgments reversed, on the law, and complaints dismissed,
without costs. We affirm the facts.