Emmett J. Schnepp, J.
This article 78 proceeding reviews a decision of the Zoning Board of Appeals of the City of Rochester denying the application for a special exception to use premises in an R-3 district at 109 Dartmouth Street, Rochester, New York, as a half-way house for mentally restored persons. Petitioner is a nonprofit, corporation supported by the public funds and private contributions. It acquired this property in 1967 and for sqme time prior to the application used the premises for this purpose without zoning approval, because of the erroneous issuance of a certificate of occupancy. It conducts a similar function in the immediate neighborhood at-. 155 Dartmouth Street, which is located in an R-2 zone, a higher use district. *824 Economies were effected in operational costs due to the use of the same staff and other facilities at both sites.
On May 16, 1972 respondents approved the use of 155 Dartmouth Street for this purpose as a special exception by a 4 to 2 vote. Thereafter petitioner was notified by the Zoning Administrator of the city that the operation of a half-way house at 109 Dartmouth Street required authorization as a special exception. Its application was denied on August 24, 1972 by a 2 to 2 vote. The board members voting against the applications were the same in both cases.
The facts presented in connection with the within application were substantially the same as those submitted for 155 Dartmouth Street. Under the ordinance an R-3 district is described as “ walk up apartment uses ” and the principal uses are those permitted in an R-2 district, plus multiple and row dwellings for any number of families, subject to certain conditions. Certain special exception uses permitted in an R-3 district are excluded in an R-2 district.
In either district a convalescent- home, not less than twenty feet distance from any other lot, may be authorized under the zoning ordinance of the City of Rochester as a special exception upon approval of the board (§ 115-27 B), “ if it is found that such use will not be injurious to the continguous or surrounding property and that the spirit of the ordinance shall be observed and substantial justice done. The board may impose such conditions and safeguards as are appropriate under this chapter.” (§ 115-87 B).
Section 115-6 of the ordinance defines a special exception, as a use not usually or ordinarily permitted within a district which may be authorized by the Board provided such use will serve public convenience and welfare in accordance with general or specific conditions and safeguards therein contained and any additional conditions and safeguards which máy be imposed by the Board to protect the appropriate use of neighboring property.”
Both the board members who approved the application and those who disapproved it made findings. The approving members adopted to 109 Dartmouth Street the findings madé in connection with the approval of the application for 155 Dartmouth Street. This included a finding that the use is essentially residential in character and in keeping with the appearance of the neighborhood, with no external manifestations of institutional use and that the general character» of the neighborhood is ‘ ‘ heterogeneous, having multiple dwellings, single-family *825 dwellings, and institutional uses existing in close proximity to the property in question.” The two board members, who voted against the application, found that the use would increase the density over the present allowable use by four people and would be the fourth ‘ ‘ institutional use ” within one or two blocks.” They further found that a concentration of such uses “ causes a loss of residential uses * * * envisioned by the R-3 zoning ’ ’, and that as more units are converted to institutional uses the ‘ ‘ less that remain to form a solid nucleus of R-3 permitted principal uses. ”
A special exception is a use authorized by a zoning ordinance under stated conditions and is in compliance with rather than in variance of the ordinance. The granting of a special exception is allowable when the facts and circumstances specified in the ordinance upon which the exception is permitted are found to exist. The power to grant or withhold these permits is limited by standards sufficient to contain the discretion of the board and provide the courts with a reasonable basis for judicial review of the board’s decision. The standard here is the injury to the contiguous and surrounding property and the observance of the spirit of the ordinance. The gist of the findings, which resulted in a denial of the application, relate to increased occupancy, the number of such institutions in the area and the effect such institutions have on what is termed ‘ ‘ permitted uses”. These conclusory statements find no substantiation in the record. There is no finding whatever as to the injurious effect of the use on surrounding property. In considering the number of such uses within the “ one or two blocks area”, described, no consideration whatever was given to the entire zoning district in which the subject property is located. The question as to how many uses of this type will develop in the area or the number of institutional uses is a matter for the concern of the legislative body in framing the ordinance. This type of use is permitted and within the spirit of the ordinance. The findings of the board in granting the approval of 155 Dartmouth Street, which were utilized by the two board members who approved the application, were established by the evidence before the board in this proceeding and these findings are relevant to what the board may consider on these applications, and there is no significant reason to differentiate between the two applications.
The purpose of the petitioner is to use the premises as a convalescent home, a permitted use as a special exception under certain conditions. The findings of those board members whose vote resulted in a denial of the application amount to opposition *826 to the expressed intent of the ordinance to permit this use in this zone. The proposed use is lawful and the findings which resulted in the denial of the application are without support in the evidence, are erroneous and arbitrary and are annulled. (Matter of Grand Chapter Phi Sigma Kappa v. Grosberg, 30 A D 2d 887.) Accordingly, it is directed that the special exception permit be issued to petitioner to use the premises at 109 Dartmouth Street as half-way house for mentally restored persons in accordance with its application therefor, and the action of the board is reversed, annulled and set aside.