Stewart F. Hancock, Jr., J.
The question in this article 78 proceeding is whether the existing nonconforming use of petitioners’ property — as a three- or four-family dwelling— may be changed without permission under the New York Mills Zoning Ordinance adopted in June of 1970 to a rooming or boarding house to be used in conjunction with a family care program under section 34 of the Mental Hygiene Law to be administered by Utica State Hospital.
The provision of the zoning ordinance pertaining to changes in nonconforming uses is as follows; “3. Changes. A non *654 conforming nse may be changed to another non-conforming use of the same or higher classification according to the provisions of this ordinance and when so changed such use shall not thereafter be changed to a non-conforming use of a lower classification.” (Zoning Ordinance, art. VII, § 26, subd. [3].)
Thus, the precise issue is whether the proposal to board patients under the family care program is a “ use of the same or higher classification according to the provisions of this ordinance ” as the existing three- or four-family dwelling.
Petitioners’ property, which has had its present use as a multiple dwelling for several years, became nonconforming in June, 1970 when the zoning ordinance was adopted putting the property in R-l Residential District classification where such use is not permitted (Zoning Ordinance, art. V, § 10).
Both the present use of petitioners’ property as a “ three or four-family dwelling ” and the use as a “ rooming or boarding house ” are, however, allowed under the R-2 Residential District zoning classification. (Zoning Ordinance, art. V, § 11, subd. [A].)
If, therefore, the proposed use is considered to be a “ rooming or boarding house ” it is a use of “ the same or higher classification ’ ’ and petitioners may make the change as a matter of right.
Under the proposal, rooms and meals in a family type setting would be provided for eight patients who are ready and able to return to normal community living. Petitioners, who intend to reside in the premises with their three infant children, would act as “ caretakers ” under the family care program.
The “ caretaker ” is expected to provide a pleasant home atmosphere; room, board and laundry; and personal supervision. “ She does for the patient whatever she would normally do for her own family. However, nursing care is not required.” (Brochure — Family Care and You by Department of Mental Hygiene.) (Emphasis supplied.) The basic responsibility of petitioners for the proposed patients is general supervision which includes the dispensing of medication which is provided by the hospital. In return for such services, the “ caretaker ” is paid $195 per month for each patient.
Under the typical family care program, as authorized by subdivision 12 of section 34 of the Mental Hygiene Law, “ arrangements [may be made] with suitable families for the care, maintenance and treatment of patients * * * and [the director] may place at board in a family * * * any patient for whom family care may be deemed beneficial. Patients so *655 placed in family care shall be those on conditional release because .they do not require active mental hospital care and treatment, and are suitable for placement with families in the community ”. (Emphasis supplied.) Under subdivision 6 of section 2 of the Mental Hygiene Law, “care and treatment” includes “food, clothing and maintenance ’ ’.
The eight patients boarding "with petitioners would all be attending school or job training sessions as part of a rehabilitation program at Mohawk Valley Workshop, a manpower training program, Utica College or other educational institution.
There is no definition of “ rooming or boarding house ” in the zoning ordinance and nothing prohibiting or imposing special restrictions on any particular type of rooming or boarding house as in Matter of Kanasy v. Nugent (206 Misc. 826, affd. 286 App. Div. 1038) (involving a special ordinance provision applying to “ boardinghouse ” for institutional inmates or parolees). That being so, if petitioners’ proposed use fits into the category of “boarding or rooming house ” generically, even though of a special sort, it should be allowed.
New York courts have consistently held that zoning ordinances — being in derogation of common-law property rights — must be construed in favor of the property owner (Matter of Off Shore Rest. Corp. v. Linden, 30 N Y 2d 160, 167; Thompson Ind. v. Incorporated Vil. of Port Washington North, 27 N Y 2d 537; Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N. Y. 298, 304) and applying this rule, courts have construed zoning provisions dealing with rooming and boarding houses liberally and in favor of the property owner. In Shegda v. Village of Lancaster (192 Misc. 560, affd. 274 App. Div. 1087), a convalescent home was permitted under a provision allowing ‘ ‘ rooming or boarding houses ”. The court stated (p. 563): “ It is quite frequent for doctors to recommend to people who are recovering from serious illnesses or operations that they leave the hospital for further convalescence before resuming the duties of their usual occupations. Primarily, they go to these homes to rest and recuperate. They differ in a very small degree from ordinary boarders. The fact that a nurse is on the premises to render any necessary service is not sufficient to take the proposed convalescent home of the plaintiffs out of the category of a boarding house. An ordinary boarder could become so ill that he or she might need a nurse in attendance for some period of time.” Shegda v. Village of Lancaster (supra) is cited (64 ALR 2d 1167, 1169) to sustain the general statement that ‘1 nursing or convalescent homes have usually been held to come within zoning ordinances *656 permitting operation of boardinghouses or lodginghouses in designated areas.”
Similarly, in analogous cases, the courts have adopted liberal constructions of zoning regulations favorable to the property owner. It has been held that a 1 ‘ Halfway House ’ ’ for the mentally retarded is not a “ sanitarium for the feeble minded ” (Unteed v. Lehman, 77 Ohio L. Abs. 353), and a home for unwed mothers, not a convalescent home even though it contained a room for prenatal examination by the visiting physician. (Salvation Army of Mass. v. Board of App. of Boston, 346 Mass. 492.) See, also, Matter of East House Corp. v. Biker (72 Misc 2d 823) where it was held that denial of a special exception permit for a half-way house for mentally restored persons in a zone where convalescent homes are permitted was arbitrary. Also, as stated, the use of premises in section 34 of the Mental Hygiene Law “family care” programs for mental patients, similar to the one here, has been held to come under special zoning provisions applying to a “ boarding house ” for institutional inmates or parolees — thereby establishing that such use is recognized as a type of boarding house or rooming house. (Matter of Kanasy v. Nugent, 206 Misc. 826, affd. 286 App. Div. 1038, supra.)
In view of the foregoing authorities, it is this court’s opinion that the proposed “family care” use would be allowed as a type of boarding or rooming house use in the Residential R-2 zone. That the boarders are hospital patients requiring some supervised care does not change the essential character of the boarding and rooming house use.
A holding that the “ family care ” program is not permitted as a “ rooming or boarding house ” would amount to a general prohibition against the location anywhere in the town of premises to be used for “ family care ” programs. Placement of patients at board in approved “family care homes ” by a director of a State institution with the approval of the Commissioner of Mental Hygiene is declared to be State policy by section 34 of the Mental Hygiene Law. Under case law, a village would have no power to prohibit or wholly exclude the placement of such patients in approved “ family care homes ” in variance with such policy. (See Jewish Consumptives’ Belief Soc. v. Town of Woodbury, 230 App. Div. 228, 237; see, also, Abbott House v. Village of Tarrytown, 34 A D 2d 821.) Yet, in effect, that would be the result if respondents’ contention, that “the proposed use is not contemplated by the ordinance, ’ ’ is sustained. *657 (See, also, Matter of Kanasy v. Nugent, 206 Misc. 826, affd. 286 App. Div. 1038, supra.)
The respondents’ contention that the proposed use must be disallowed because it falls within the definition of ‘ ‘ nursing home ” under the ordinance is not well founded. A “nursing home ” under the ordinance is: “ A proprietary facility, licensed or regulated by the State of New York for the accommodation of convalescents or other persons who are not acutely ill and not in need of hospital care but who require shilled nursing care and related medical services which are prescribed by or performed under the direction of a person or persons licensed to provide such care or services in accordance with the laws of the State of New York.” (Emphasis supplied.)
The proposed use does not fit this definition. A nursing home must be licensed or regulated by the State of New York. It is for, people who require shilled nursing care and related medical services. The emphasis in a nursing home, as the term implies, is nursing care. In the ‘ ‘ family care home ’ ’, the emphasis is on the “ home atmosphere ”. Although the services entail some supervision and care, nursing care is not required. Finally, the family care home need not be licensed or supervised by the State.
Furthermore, although defined in the ordinance, a ‘ ‘ nursing home ’ ’ use is not permitted in any one of the zone classifications. Therefore, if respondents should be correct in their contention that the ‘1 family care home ” is a “ nursing home ’ ’, the result, again, would be the total prohibition of family care homes throughout the whole village — something contrary to State policy as expressed in subdivision 12 of section 34 of the Mental Hygiene Law — and, therefore, unlawful. (See Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 237, supra; Abbott House v. Village of Tarrytown, 34 A D 2d 821, supra; see, also, Matter of Kanasy v. Nugent, 206 Misc. 826, affd. 286 App. Div. 1038, supra.)
The cases cited by respondents, such as Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton (1 N Y 2d 508), are not in point. The motion here does not involve a review of the actions of an administrative agency, but rather the legal interpretation of the provisions of the zoning ordinance.
The requested relief in this article 78 proceeding — a direction to the Zoning Board of Appeals that it issue the letter or statement desired by petitioners — seems improper in the absence of a provision in the ordinance or in the law mandating such procedure. The court, therefore, will treat the matter as a *658 declaratory judgment action. (CPLR 103, subd. [c]; Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 408.) Petitioners are, therefore, entitled to a declaratory judgment in accordance with this decision.