Carl E. Mooradian, Esq. Corporation Counsel, Niagara Falls
You have asked whether your "second-class" city may supersede section42 of the Second Class Cities Law in order to provide a heavier fine or imprisonment than is authorized by that section, which limits the penalty for violating an ordinance to $150 or 150 days, or both. This section has been held to preclude cumulative penalties for a continuing violation (People ex rel. LoRusso v Briary Imp. Corp.,77 Misc.2d 797 [App Term, 2d Dept, 1973], affd 34 N.Y.2d 788 [1974]).
Section 4 of the Second Class Cities Law provides that it applies only to a city that was a city of the second class on December 31, 1923*, and that any single provision of the law applies only "until such provision is superseded pursuant to the municipal home rule law". Thus, a second class city can supersede any provision of the Second Class Cities Law unless the provision deals with a subject that is withheld from local-law power. For example, a second class city cannot supersede section 14, "Elections", to provide that elections are to be held in even-numbered years (NY Const, Art XIII, § 8). Nor could a second class city supersede section 92, "Repair of sidewalks; removal of snow and ice," to provide that the city would not be liable for any damages suffered by third parties from the moment notice to repair was given (Municipal Home Rule Law, § 11[1][j]).
It is not clear whether supersession "pursuant to the municipal home rule law" simply means by a local law enacted in the authorized manner or means that the local law must be supported by one of the specified powers in section 10. It has been said that "the Second Class Cities Law is more or less obsolete" (Matter of Grenfell, 269 App. Div. 600, 603 [3d Dept, 1945]). Yet, in the leading case on supersession (Fullerton v City ofSchenectady, 285 App. Div. 545 [3rd Dept, 1955], affd 309 N.Y. 701, rearg den, 309 N.Y. 855, appd dsmd, 350 U.S. 980 [1956]), the court, while it implied that the power of supersession was plenary, in fact specified the home-rule grant under which the local law was enacted. (These cases arose under City Home Rule Law. Prior to 1965, section 4 of the Second Class Cities Law referred to the City Home Rule Law.)
This ambiguity is significant in the case of superseding section 42 because the specific grant of home-rule power to provide for civil penalties, fines and imprisonment for violations is the power to enact local laws "to provide for enforcement of local laws" (Municipal Home Rule Law, § 10[4][b]). But use of this power would not "supersede" section 42, which limits a second class city's ordinance-making power. Rather, this home-rule power would simply allow a city to avoid section 42 by repealing its ordinances and re-enacting them as local laws. Since all cities by general law have been granted general power to regulate by ordinance, including providing penalties for violations (General City Law, § 20[22]), it seems irrational to interpret section 4's power to supersede the Second Class Cities Law so narrowly that a second class city by a simple act of supersession cannot remove a limitation that does not apply to other cities.
That the power to supersede should be read broadly can be demonstrated in another way. Prior to the local-law power granted to cities by the City Home Rule Law, all city charters were special acts of the Legislature.*
The original Second Class Cities Law, enacted in 1906, was known as the "Uniform Charter of Cities of the Second Class" (ch 473, § 1). The law in effect repealed existing second class city charters to the extent that they were inconsistent with the "uniform" law (id., § 227, § 251 in the current version). Until the 1923 "Home Rule" amendment to the Constitution was adopted and the City Home Rule Law enacted in 1924 (ch 363), a city charter could be amended only by a "local law". (Prior to the volume of session laws of 1924, city charter amendments were indexed as "local laws", not as special acts.) One of the purposes of the City Home Rule Law was to transfer to cities the power to amend their own State-enacted charters. Today's Municipal Home Rule Law spells this out: "The revision of its charter * * * by local law adopted by its legislative body pursuant to the provisions of this chapter * * *" (10[1][ii][c][1]). We think that "pursuant to the municipal home rule law" in section 4 of the Second Class Cities Law means that a second class city may enact a local law that removes a restriction on its power so long as the power either relates to "property, affairs or government" or, if not so related, has not been restricted (Municipal Home Rule Law, § 10[1][i] and [ii]).
Since, as noted earlier, the power to provide penalties for violating ordinances is a general power of cities and since the "restriction" in the Second Class Cities Law predates home-rule power to amend charters, we believe that your city can enact a local law simply providing that section 42 is superseded and that penalties for violations of ordinances are to be imposed as the ordinances provide. Such a local law would preserve pre-existing penalties that would otherwise fall under theLoRusso case, supra.
We conclude that a second class city may supersede any provision of the Second Class Cities Law except provisions dealing with subjects either wholly withheld from local-law power or, if other than property, affairs or government, specifically restricted by the Legislature under its constitutional power (Art IX, § 2[c][ii]).
* A city was a city of the second class if its population according to the 1920 Census was at least 50,000 but under 175,000. See 1981 Op Atty Gen (Inf) 196. The 1920 population of Niagara Falls was 50,760 (Legislative Manual [1977-79, p 1337).
* In all states except New York, a local law is an enactment by the Legislature. In this sense, a local law is a statute that applies to a specific geographical area; a special law applies to something specific in some sense other than geographic. (See, e.g., Clark v Finley, 93 Tex. 171,178, 54 S.W. 343, 345 [1899].) This distinction still obtains in two sections of Article III, where the terms are "private or local bill" (§§ 15, 17). In section 17, there are 14 prohibitions on the passage of private or local bills, six of which are local in this technical sense, six are private, and two could be either type or even both at once.