Kaplan, M.
The defendant has been charged with a violation of subdivision g of section 436-5.0 of the Administrative Code of the City of New York. The defendant was arrested on July 29, 1955, in his store at No. 1760 Madison avenue, New York City. A policeman testified that he visited said premises and observed certain pistols and revolvers hanging from a wire strung across the store as well as in a showcase. The policeman asked the defendant if the pistols and revolvers were for sale, which question was affirmatively answered and the price stated. Thereafter the defendant was arrested and eighteen of the said pistols and revolvers were seized, five of which were placed in evidence as representative of all. These pistols and revolvers were of a metallic substance and each was of a type commonly known as a toy pistol or revolver capable of use with explosive *823 paper caps. They appeared to be substantial duplications in outward physical appearance, but not in mechanical operation or makeup, of the (a) Colt frontier revolver, (b) 25-calibre pocket type automatic pistol and (c) pocket type percussion revolver. None was capable of using bullets, pellets or blank cartridges of any kind.
The defendant has moved to dismiss on the grounds that subdivision g of section 436-5.0 of the Administrative Code of the City of New York is unconstitutional in that (1) it is inconsistent with section 1894-a of the Penal Law of the State of New York; (2) the State by sections 1894-a, 1896 and 1897 of the Penal Law has pre-empted the entire field with respect to the sale, use and possession of toy cap and imitation pistols; (3) the ordinance does not set up standards by which the crime is adequately defined.
The sole question presented is: Must subdivision g of section 436-5.0 of the Administrative Code of the City of New York, prohibiting the sale, possession and use of toy or imitation pistols which substantially duplicate actual pistols, be declared invalid as unconstitutional in the light of the various provisions of the Penal Law of this State.
Subdivision g of section 436-5.0 of the Administrative Code of the City of New York provides that: “ It shall be unlawful for any person to sell or offer for sale, possess or use or attempt to use or give away, any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel. However, the possession or display of such instrument by a manufacturer or dealer, shall not be a violation of this section if sale is accomplished by delivery to a point without the city, and possession for such purpose by a manufacturer or dealer shall not be unlawful. Every such toy or imitation pistol or revolver hereinafter manufactured, distributed, transported or sold shall have legibly stamped thereon, the name of the manufacturer or some trade name, mark or brand by which the manufacturer can be readily identified. * * * Any person who shall violate this subdivision shall be guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars ($1,000) or imprisonment not exceeding one (1) year, or both.”
*824 It is not necessary to inquire deeply into the conditions leading to the enactment of this ordinance. The incidence of holdups with toy or imitation pistols or revolvers in the city of New York is a matter so notorious as to admit of no doubt as to its existence. The problem is important and warrants some degree of regulation but it remains to be considered whether the city council of the City of New York had the power to legislate with respect thereto in the manner provided in subdivision g of section 436-5.0 of the Administrative Code.
The Constitution of the State of New York (art. IX, § 12) and the City Home Rule Law (§ 11, subd. 2) have conferred upon the cities the power to adopt and amend local laws relating to the “ property, safety and health ” of their inhabitants, provided, however, that such local laws are not inconsistent with the Constitution and the laws of the State. Such local laws may not “ change or supersede any act of the legislature ” (Schieffelin v. Berry, 127 Misc. 178, affd. 217 App. Div. 451, affd. 243 N. Y. 603; Hayward v. City of Schenectady, 251 App. Div. 607). An ordinance which is in conflict with a State law of general character and State-wide application is invalid (New Rochelle Trust Co. v. White, 283 N. Y. 223; People v. Westchester Co., 282 N. Y. 224; Good Humor Corp. v. City of New York, 290 N. Y. 312).
There are several modes by which a local ordinance may come into conflict with a State law. Firstly, a conflict may exist between law and ordinance because one prohibits what the other authorizes, or vice versa. Defendant here claims a conflict exists because section 1894-a of the Penal Law makes lawful “ at all times ” the use and sale of toy cap pistols, toy canes, toy guns or other devices in which paper caps containing a stipulated amount of explosive compound are used. By its enactment, subdivision g of section 436-5.0 of the Administrative Code of the City of New York bans the sale, use and possession of any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver unless certain prerequisites are met.
Section 1894-a of the Penal Law sets forth the definition of “ fireworks ” and excludes from said definition (subd. 1, par. [a]): “ (2) toy pistols, toy canes, toy guns or other devices in which paper caps # * * are used, * * * the sale and use of which shall be permitted at all times.” (Emphasis supplied.) The use of toy pistols and revolvers using paper caps is not per se harmful. They are customarily used by children in play with or without the caps. Webster’s New International Dictionary (2d ed.) defines “ toy ” as a “ play-
*825 thing; something that is merely amusing or diverting; a thing to play with; specif., an article, often an imitation of a living or of a manufactured thing, on a small scale, designed and made for the amusement of a child or for his use in play.” In common speech the term embraces only such things as are primarily intended for the entertainment and amusement of children. (Zeh v. Cadwalader, 42 F. 525.) The danger lies in the illegal use thereof by nefarious individuals intent on the commission of crime. The Legislature of the State recognized that such instruments were susceptible of other uses, and to prevent the illegal use thereof enacted sections 1897 and 1898 of the Penal Law which make it a crime to carry or possess an “ imitation pistol ” with intent to use the same unlawfully against another.
The city ordinance under consideration prohibits the sale, possession or use of “ any toy or imitation pistol or revolver ” which substantially duplicates an actual pistol or revolver unless certain requirements are met. The ordinance does not specifically exempt toy or imitation pistols or revolvers that use paper caps, which are permitted “ at all times ” by section 1894-a of the Penal Law without restriction as to size, color or appearance. The use of the word “any” in the ordinance imports no limitation as to the type or kind of toy pistols or revolvers affected (Matter of Beach, 154 N. Y. 242). The word ‘ ‘ any ’ ’ means ‘ every ’ ’ and is to be applied indifferently, and is invariably employed in the sense of all or each one of all (People v. Clark, 7 N. Y. 385; People v. Joyce, 112 App. Div. 717; People v. Rosenheimer, 70 Misc. 433; Matter of Schuster, 111 Misc. 534). As used in the ordinance, it is a general word not limited or restricted by the context. As used, it means if there is a toy or imitation pistol or revolver not meeting the requirements of the" statute, the kind, size, appearance or operation is immaterial. In this sense it includes toy and imitation pistols or revolvers using paper caps. The ordinance interdicts without exception that which is permitted by State law, and is thus inconsistent therewith. Such ordinance is invalid.
Secondly, a State law may fully pre-empt a particular legislative area so that there is no room for local regulation, in which case a local ordinance attempting to impose any additional regulation in that field will be regarded as conflicting with the State law, and for that reason void, even though the particular ordinance does not directly duplicate or otherwise conflict with any express provision of the State law. (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55.) Section 12 of article IX of the State Constitution, and subdivisions 1 and 2 *826 of section 11 of the City Home Rule Law indicate that there is a division between city and State affairs. The difficulty of drawing a distinction between city and State affairs was pointed out in Adler v. Deegan (251 N. Y. 467) (Multiple Dwelling Law case) and the court held that the line of demarcation must be drawn by the court as cases arise.
Illustrations of matters which may fall within one or the other category were given by Chief Judge Cakdozo in the Adler case. He there stated (p. 489): “ There are other affairs exclusively those of the State, such as the law of domestic relations, of wills, of inheritance, of contracts, of crimes not essentially local (for example, larceny or forgery), the organization of courts, the procedure therein. None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to the existing forms of charters. Subjects such as these, not affecting the welfare of the inhabitants of the city qua inhabitants thereof, are not covered by the grant of power to regulate their conduct and make provision for their welfare, though the act or omission be within the municipal territory.”
The property, safety and health of the inhabitants of the City of New York are not under the Home Rule Law city responsibilities only, but are also those of the State. Public safety involves protection against robbery and assault by dangerous weapons, and these crimes are not peculiar to the inhabitants of the City of New York. The State has seen fit to legislate for the protection and safety of all inhabitants of the State and has enacted sections 1897 and 1898 of the Penal Law. These sections are in pari materia and must be construed together. The Penal Law makes no distinctions between cities, towns or villages. Section 1897 of the Penal Law makes it a crime for a person to attempt ‘ ‘ to use against another an imitation pistol * * * or who, with intent to use the same unlawfully against another, carries or possesses a # * * imitation pistol ”. Section 1898 of the Penal Law provides that: ‘1 The possession, by any person other than a public officer, of any of the weapons, instruments or appliances specified in sections eighteen hundred and ninety-seven * * * except as permitted therein, is presumptive evidence of carrying, concealing or possessing with intent to use the same in violation of this article.”
The intent to use an imitation pistol unlawfully against another is presumed to exist from possession alone of such imitation pistol. This presumption is, however, rebuttable (People v. Russo, 278 App. Div. 98, affd. 303 N. Y. 673; People v. Adamkiewicz, 298 N. Y. 176).
*827 I cannot escape the view that the State has pre-empted the entire field with respect to the possession and use of toy and imitation pistols and revolvers. The word “ imitation ” when applied to pistols and revolvers means so nearly resembling the genuine as to mislead with the apparent object of producing, and likely to produce, upon the minds of those against whom it is to be used, the belief that the imitation weapon is capable of producing all the injurious consequences to the victim as the use of the genuine article itself. The State has legislated in all respects relative to the possession and use of imitation pistols. The use of the term “ imitation pistol ” in section 1897 of the Penal Law includes toy pistols and revolvers capable of using explosive caps when the same are not used in the sense of section 1894-a of the Penal Law as a plaything for children. Thus the State law has provided adequate safeguards with respect to the use and possession of imitation pistols and revolvers. It has afforded children the use of playthings and has legislated against the illegal use and possession of such instruments in the hands of potential wrongdoers. The city ordinance attempts to legislate in the same field. The legislation by the State constitutes such a pre-emption in the field of public safety as to preclude the city from enacting conflicting legislation in the same area.
The ordinance as promulgated by the city makes lawful the possession of any imitation or toy pistol or revolver if the same meets the requirements of the statute. Under this statute the potential robber and mugger could without fear of arrest carry a statutory toy or imitation pistol or revolver until he had the time or opportunity to carry out his nefarious act. The ordinance, furthermore, could conceivably deprive children of playthings. Thus there is a direct conflict with State law and policy under sections 1894-a, 1897 and 1898 of the Penal Law. The State law, of course, must prevail.
It is scarcely necessary to go beyond this point to compel the conclusion that the city council of the City of New York has attempted to legislate with respect to matters contained in the Penal Law which has State-wide application. Neither the Constitution of the State of New York nor the City Home Rule Law gives cities any express power to so legislate. No action can be taken by the city council of the City of New York which would supersede or affect the existing general criminal law of the State. The city council of the City of New York has attempted to do so in the enactment of the ordinance here under consideration. I find said ordinance to be invalid.
The complaint is dismissed and the defendant is discharged.