Leonard Rubeneield, J.
In this action for a declaratory judgment, plaintiff moves for a preliminary injunction restraining the defendant Town of Orangetown, and its officers, agents and *365 employees, from enforcing Town of Orangetown Local Law No. 1 of 1971, entitled ££ Regulation of Pregnancy Termination Facilities
Plaintiff is a licensed physician engaged in the private practice of medicine and specializing in obstetrics and gynecology. He maintains one office in New York City and another at his home located in the hamlet of Tappan, Town of Orangetown. The latter facility is operated under a certificate of occupancy issued by the Office of Building, Zoning and Planning Administration and Enforcement of the Town of Orangetown. As a part of his practice, plaintiff has performed a number of justifiable abortional acts, most of them in his office in Tappan.
The ordinance complained of by the plaintiff, and which he seeks to have declared unconstitutional, provides as follows:
“ Chapter 38 of the Code of the Town of Orangetown, Article 1.
“ Section 38-1. Purpose. The purpose of this ordinance is to protect the public health, safety, morals and welfare of the people of the Town of Orangetown by establishing standards governing where or under what circumstances or controls justifiable abortions may be performed.
“ Section 38-2. Permitted Place. A regulation requiring the performance of justifiable abortional acts in a licensed and duly accredited hospital notwithstanding any other law, statute, ordinance or other regulation.
“ Justifiable abortional acts as defined in the Penal Law of the State of New York, shall be performed only in a hospital duly licensed and accredited under the New York State Department of Health, and having equipment and facilities acceptable to the State Hospital Review and Planning Council, or in a suitably equipped and staffed facility administered by such hospital or in a suitably staffed and equipped facility having a hospital affiliation agreement acceptable to the State Hospital Council.
“ Section 38-3. Prohibition. If it is found that any building, except where authorized and permitted pursuant to Section 38.2 of this Chapter, is being utilized for and equipped with facilities for acts of abortion, the Director of the Office of Building, Zoning and Planning Administration and Enforcement shall notify the owner of the property or the owner’s agent to cease and desist the use of said building. Such order and notice shall be in writing and may be served upon the person, firm or corporation to whom it is directed either by delivering it personally to him or his agent or by posting the same upon a conspicuous portion of the building where the act is being performed.
“Section 38-4. Violations and Penalties. In addition to any penalties as provided by State law, the person, firm or corporation who shall violate this article or fails to comply with any requirements thereof or with any notice, order or directive, shall be guilty of a misdemeanor, and any person, firm or corporation violating the same, upon conviction, shall be punished by a fine not exceeding One Thousand ($1,000.00) Dollars, and/or imprisonment not exceeding 15 days, or by both such fine and imprisonment; and each day such violation shall be permitted to exist shall constitute a separate offense.
“ The imposition of penalties herein prescribed shall not preclude the Town from instituting an appropriate action or proceeding in law or in equity to prevent the use of the building for the unauthorized and/or illegal act.
“ This Local Law shall take effect immediately.”
*366 Essentially then, the ordinance appears to prohibit the performance of justifiable abortional acts in any building — including a doctor’s office- — except a hospital, a facility administered by a hospital, or a facility having a hospital ..affiliation agreement. The owner of an unapproved building which is being utilized and equipped with facilities for acts of abortion is subject to a punishment of 15 days’ imprisonment and.a $1,000 fine for each day a violation of the ordinance is permitted to exist.
Turning to the question of its validity, it should be recalled at the outset that there is a presumption in favor of the constitutionality of a legislative enactment which applies as strongly to a municipal enactment as to one passed by the Legislature of the State. One who attacks the constitutionality of a municipal ordinance has the burden of establishing its invalidity beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d. 215, 218-219 ; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 541 ; Van Curler Corp. v. Schenectady, 59 Misc 2d 621, 626) ; In addition, although the dangers sought to be alleviated or pie-, vented are not clearly indicated in the ordinance or in the papers submitted to the court,[1] there is a rebuttable presumption that there exists a factual basis and necessity, known to the Legislature, which supports the provisions of the enactment (Matter of Davis v. Board of Elections, 5 N Y 2d 66, 69 ; Wiggins v. Town of Somers, supra, pp. 218-219). If any state of facts reasonably can be conceived that would sustain the ordinance, the existence of that state of facts at the time the law was enacted is to be assumed (Matter of Spielvogel v. Ford, 1 N Y 2d 558, 562, app. dsmd. 352 U. S. 957 ; 8 N. Y. Jur., Constitutional Law, § 62). Plaintiff has failed, on this motion, to make out a showing that the ordinance is not reasonably related and applied to some actual and manifest evil and, therefore, the requested relief may not be granted on that ground.
*367 Plaintiff’s principal argument is that the ordinance is unconstitutional in that it “ is in conflict with and seeks to override the policy of * ® * the Penal Law ’ ’ as amended by chapter 127 of the Laws of 1970.
Section 125.40 of the Penal Law provides: “ A person is guilty of abortion in the second degree when he commits an abortional act upon a female, unless such abortional act is justifiable pursuant to subdivision three of section 125.05 ”.
Section 125.45 of the Penal Law provides: “A person is guilty of abortion in the first degree when he commits upon a female pregnant for more than twenty-four weeks an abortional act which causes the miscarriage of such female, unless such abortional act is justifiable pursuant to subdivision three of section 125.05.”
Subdivision 3 of section 125.05 of the Penal Law provides in pertinent part as follows: “ ‘ Justifiable abortional act.’ An abortional act is justifiable when committed upon a female with her consent by a duly licensed physician acting (a) under a reasonable belief that such is necessary to preserve her life, or, (b) within twenty-four weeks from the commencement of her pregnancy. ’ ’
If the ordinance is in conflict with these provisions of the Penal Law, then the ordinance must be declared to be unconstitutional. Section 2 (subd. [c], par. [ii]) of article IX of the New York State Constitution provides that ‘ ‘ every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law ” (emphasis added). Section 3 (subd. [d], par. [1]) of article IX defines a “ general law ” as “ a law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages. ’ ’ The Penal Law has been declared to be a general law within the meaning of the Constitution (People v. Conte, 64 Misc 2d 573, 575-576 ; Town of Babylon v. Conte, 61 Misc 2d 1055 ; People v. Del Gardo, 1 Misc 2d 821, 827).
The primary method of determining whether an ordinance is inconsistent with the Penal Law is to see whether the local law prohibits anything which the State law permits (People v. Lewis, 295 N. Y. 42, 51 ; Wholesale Laundry Bd. v. City of New York, 17 A D 2d 327, 329, 12 N Y 2d 998 ; People v. Del Gardo, supra, p. 824). “ Where what would be permissible under the State law becomes a violation of the local law, the latter law is unauthorized (Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, affd. 256 N. Y. 619) ” (Wholesale Laundry Bd. v. City of New York supra, p. 330). The court *368 bélieves that to be the ease here: The State Penal Law specifically exempts, from: the. criminal category all “ justifiable abor-' tional acts ” as-defined, whether performed in a hospital or in the plaintiff’s office,"while the local law makes it a crime for the plaintiff to perform a justifiable abortion in his own office.[2]
Moreover; the, court is of the opinion that the ordinance conflicts not only with the letter of the law, but also with the policy which induced;the- enactment of abortion reform legislation of the sweeping character here involved. Several bills had been introduced in the New York Legislature which were more restrictive than the bill finally enacted into law, including at least two bills which provided that noncriminal abortions could be performed only in hospitals (see summary of Senate Bill 3500,1970, New York Legis. Record, p. S218, and Assembly Bill 8, id., p. A2). And shortly before the New York law was enacted, the State of Hawaii passed a law which is similar in character to the one passed in New York, but which specifically requires that justifiable abortions be performed in licensed hospitals. (See 1970 Supplementary Practice Commentary on Penal Law, § 125.05 by Richard G. Denzer, McKinney’s Cons. Laws of N. Y., Book 39, 1970-1971 supp., p. 80.) Thus, although the Legislature was fully aware of the numerous additional restrictions that were urged and could have been placed in the abortion reform law, and although the reform law was passed only after long and sometimes bitter debate (New York Times, April 10, 1970, p. 1, col. 8; id., April 11, 1970, p. 1, col. 3; id., April 13, 1970, p. 1, col. 7), the Legislature nevertheless enacted a law without the restrictions now sought to be imposed by the Town of Orange-town. It seems to the court that the ordinance contravenes the manifest policy of the State Legislature to leave the area of justifiable abortions unrestricted — and in the hands of licensed physicians and their patients — except as provided in subdivision 3 of section 125.05 of the Penal Law. It may be that since the Legislature placed no restrictions on out-of-hospital abortions performed by licensed physicians it had in mind, among other considerations, the privacy of the doctor-patient relationship that every woman presumably would desire. Clearly, the local ordinance at bar violates this privacy in requiring a patient to have the abortion performed in a hospital or affiliated facility.
*369 In addition, insofar as the ordinance provides that a violation of its provisions shall constitute a misdemeanor punishable by 15 days* imprisonment and a fine of $1,000, the ordinance is inconsistent with section 309 (subd. 1, par. [f]) of the Public Health Law. The defendant town maintains that it has power to enact legislation such as is involved here based on general grants of the police power contained in section 10 (subd. 1, par. a, subpar. [12]) of the Municipal Home Buie Law and subdivision 15 of section 130 of the Town Law. But as previously indicated, the exercise of that police power must be consistent with the general laws of the State, The Public Health Law is such a law and it specifically deals with the adoption, by local governing bodies, of health or ‘' sanitary ’ ’ regulations such as is involved here. Section 308 of the Public Health Law provides that it is the “ local board of health [which] shall * * * (d) make and publish, from time to time, such orders and regulations, not inconsistent with the provisions of the sanitary code, as it may deem necessary and proper for the preservation of life and health *’ (emphasis added). Since the ordinance under consideration is essentially a health regulation, it is valid, if at all, only as a regulation adopted by the Town Board acting as the Board of Health pursuant to subdivision 2 of section 302 of the Public Health Law. However, section 309 (subd. 1, par. [f]) of the Public Health Law limits the penalty which the Board of Health may impose for a violation of its regulations to a civil penalty {‘ not exceeding one hundred dollars for a single violation or failure, to be sued for and recovered by it in the municipality ’*. Accordingly1", the attempt of the Town Board to make a violation of the ordinance a misdemeanor, rendering plaintiff subject to a fine and imprisonment, “ is on its face void and invalid ’* (Guyle v. City of Auburn, 12 Misc 2d 1047, 1050 ; cf. 9 Op. St. Comp., 1953, p. 257).
But, the fact that the penal clause of the regulation is void, because it conflicts with the Public Health Law, does not require that the entire ordinance be declared unconstitutional. It is a fundamental rule of statutory construction, which is fully applicable to municipal ordinances, that a statute or ordinance may be constitutional in one part and unconstitutional in another part and if the invalid part is severable from the rest, the portion which is constitutional mayr stand while that which is unconstitutional is struck out. (Fougera & Co. v. City of New York, 224 N. Y. 269, 282-283 ; Duryee v. Mayor, etc. of N. Y., 96 N. Y. 477 ; 8 N. Y. Jur., Constitutional Law, §§ 86-93.) To apply the foregoing rule, it is not necessary for the ordinance to provide expressly that invalidity of one part shall not affect the validity *370 of other parts (cf. Duryee v. Mayor, etc. of N. Y. supra, pp. 491-492 ; Schacht v. City of New York, 30 Misc 2d 77, 85, mod. on other grounds 14 A D 2d 526). In this instance the penal clause could be severed and excised without impairing the remainder of the ordinance (cf. Village of Carthage v. Colligan, 216 N. Y. 217 ; Guyle v. City of Auburn, supra, p. 1050) and, therefore, if the balance of the ordinance is to fall as this court believes it must, it is because the remaining portion of the ordinance also conflicts with the general laws of the State.
Additional considerations lead also to the conclusion that the ordinance is unconstitutional because the State has pre-empted this area of legislation, that is, the State has evidenced a purpose and design to occupy the field so as to prohibit additional regulation by local authorities in the same area.[3] (Wholesale Laundry Bd. v. City of New York, 17 AD 2d 327, 330 ; 12 N Y 2d 998, supra ; Grimm v. City of New York, 56 Misc 2d 525 ; People v. Del Gardo, 1 Misc 2d 821, 825.) The State has enacted legislation which covers all abortional acts and has expressly defined which abortional acts are criminal and which are justifiable. "Under this amendment, all abortions are illegal except those which the Legislature has specifically exempted as “ justifiable ”. Those abortions which are defined as justifiable are, in the eyes of the law, justifiable whether performed in a hospital or in a doctor’s office. While this court is of the opinion that abortions performed in a hospital are safer and therefore preferable, if the scope of exempted or justifiable abortions is to to be restricted further, it must be accomplished through the State Legislature rather than through the local governing body.
Also, the New York State Department of Health has amended the State Hospital Code, pursuant to section 2803 of the Public Health Law, so as to regulate the performance of abortions in hospitals (see 10 NYCRR 720.7 [p]; 720.17 [m] and [n]; 720.18 [j] and 721.1 [m]) and in “independent out-of-hospital health facilities ” (see 10 NYCRR 751.9). The Department of Health has not enacted regulations which confine the performance of legal abortions to hospitals or other State-approved facilities, although the State Public Health Council, on May 12, 1970, adopted ‘ ‘ guidelines ’ ’ for abortional procedures which included a ‘ ‘ recommendation ’ ’ that abortions be performed only in a hospital, a facility administered by a hospital or in a facility having a hospital affiliation agreement. The Town of Orange- *371 town seeks to require by local law that which the State Public Health Council has set forth only as a guideline. The guidelines adopted by the State Public Health Council do not have the force and effect of law since they are not formal regulations of the Department of Health. (Public Health Law, § 225, subd. 3.) It seems to the court, therefore, that while .the Department of Health is concerned with the performance of abortions both inside and outside of hospitals, it has refrained from regulating the performance of justifiable abortions — except in hospitals — because the Legislature has so recently acted without imposing additional requirements and without giving the Department of Health specific powers to so regulate.
Of equal importance, the State has also reserved to itself the power to license and regulate the activities of physicians in the practice of medicine (Education Law, § 6501 et seq.) and to establish and maintain high standards of professional conduct (Education Law, § 6514). Section 6514 (subd. 2, par. [e] ) of the Education Law specifically deals with penalties which may be imposed upon physicians for procuring or performing “ criminal abortions ’ And although we are considering local legislation which is properly viewed as a health regulation, the ordinance is, nevertheless, predominantly concerned with that area of health which involves the “ practice of medicine ” (Education Law, § 6501, subd. 4). Chapter 127 of the Laws of 1970 is entitled “ An Act to amend the penal law, in relation to justifiable abortional acts by physicians in the course of their practice of medicine ” (emphasis added). In this court’s view, the ordinance adopted by the Town of Orangetown constitutes both an unauthorized attempt to further amend the Penal Law, and an encroachment upon the practice of medicine by physicians— an area which this court believes has been pre-empted by the State. It should be noted in this connection that section 136 of the Town Law sets forth an extensive list of businesses and occupations which may be licensed or otherwise regulated by a Town Board. The medical profession is not among the list —■ a fact which, under the doctrine of expressio unius est exclusio alterius, constitutes a further indication that the defendant town lacked authority to adopt the ordinance. (62 C. J. S., Municipal Corporations, § 234; cf. Jackson v. Citizens Cas. Co. of N. Y., 252 App. Div. 393, 396, affd. 277 N. Y. 385.) The court does not believe that a different conclusion is required by Grossman v. Baumgartner (17 N Y 2d 345). That case merely held that a New York City prohibition against tattooing was not invalid on the grounds of pre-emption where special powers in the field of health had been granted to the city and where the *372 State had ‘1 not purported either to license or regulate those engaged in the business of tattooing, nor * * * evidenced any desire or design to occupy the field ” (id., p. 351).
Of course, there are situations where a local legislative body has power to adopt restrictive regulations notwithstanding that the State had legislated and had specifically permitted certain forms of conduct. It has been said, for example, that ‘1 a municipality which is empowered to adopt health regulations may, in spite of general regulations by the State, adopt additional regulations or requirements where there is a real distinction between the city and other parts of the State. They must be based upon special conditions existing in the city” (Matter of Kress & Co. v. Department of Health of City of N. Y., 283 N. Y. 55, 59). There is nothing before the court which indicates that to be the case here. The ordinance is designed to 11 protect the public health, safety, morals and welfare of the people of the Town of Orangetown 5 ’, but the effect of this legislation, or of any patchwork local legislation in an area which involves State-wide concerns rather than special local conditions, may be merely to shift whatever burdens'or hazards exist from one town or city to another. Indeed, it is not unreasonable to suspect that the abortion controls enacted by the City of New York may, in part, be responsible for the number of abortions being performed in counties outside the city.
There may also be cases where the local government has been given power to abrogate or supersede the State law. However, ‘ ‘ the authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit” (Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 234, affd. 256 N. Y. 619). The court does not believe that the general and limited grants of power contained in section 10 (subd. 1, par. a, subpar. [12]) of the Municipal Home Buie Law, subdivision 15 of section 130 of the Town Law, and subdivision (d) of section 308 of the Public Health Law are sufficient to sustain the ordinance here involved.
Accordingly, since plaintiff has established a clear legal right to the relief sought and has demonstrated that he will be subjected to irreparable injury if a restraining order is not obtained, the motion for a preliminary injunction is granted. Bond is fixed in the sum of $1,000 and should be submitted with the order to be entered hereon.

. C£. An introductory note to abortion regulations adopted by The New York City Board of Health on September 17,1970, indicates that the regulations were designed “to provide public health standards of care in the performance of abortions, with proper regard for the health, safety and well-being of the patient. This article requires that abortions be performed only by physicians operating in a place or facility where there is qualified supervision in obstetrics or surgery, and where equipment, staff and facilities are provided to handle hemorrhage, shock, cardiac arrest and other emergencies, as well as to apply aseptic procedures. The article further protects the health of the patient by providing that abortions performed on women pregnant 12 weeks or less may be performed on an ambulatory basis; that pregnancies of longer duration or those involving medical, surgical, gynecological or psychiatric conditions, or complications occurring during or after the abortion, require in patient facilities. The article also requires that family planning services should be made available to patients.” (New York City Health Code, tit. Ill, art. 42.)

. While it was also argued that the ordinance prohibits, as a practical matter, all justifiable self-abortional acts notwithstanding that they are permitted under the Penal Law (§§ 125.50, 125.55), plaintiff lacks the requisite standing to raise the question (cf. Grossman v. Baumgartner, 17 N Y 2d 345, 351-352 ; Matter of Davis v. Board of Elections, 5 N Y 2d 66, 70. Cf. United States ex rel. Williams v. Follette, 313 F. Supp. 269, 273 [S.D.N.Y., 1970]).

. The court is aware of the decision of Mr. Justice Suozzi in Robin v. Village of Hempstead (66 Misc 2d -) which involved a similar ordinance enacted by the Village of Hempstead in Nassau County. To the extent that judicial symmetry is lacking, the issues must await resolution in the appellate courts.