John C. Marbach, J.
This is a motion for an order pursuant to sections 2801-a and 2801-b of the Public Health Law and section 1115 of the Business Corporation Law, restraining the defendants from performing abortions or otherwise operating an abortion clinic pending determination of the action.
This is a companion motion to that made in the case of People v. Hatchamovitch, Doing Business as Pelham Medical Group, decided this date, in which the People also seek to enjoin the alleged operation of an abortion clinic in violation of the Public Health Law. Because of the distinguishable facts attendant to the Pelham Medical Group, the motions, although argued together, have been decided in separate opinions.
FACTS
The defendant, Dobbs Ferry Medical Pavillion Inc., is a New York corporation whose office is located on the top floor of a medical building located at 88 Ashford Avenue, Dobbs Ferry, New York. The People claim that the defendant corporation specializes in early pregnancy terminations and operates as a commercial and independent facility. There is no doubt that abortions are being conducted in this facility. The startling figure of 700 a month was mentioned in oral argu *887 ment by the People based on records required to be filed with the State Health Department. Drs. Robert Dorsen, Donald Pearlman and Jerome Quint, whose qualifications are not questioned by the People, perform the abortions. These doctors, on June 30, 1971, formed a partnership to conduct their practice at the offices rented to them at the 88 Ashford Avenue address. In the partnership agreement, it was agreed that ‘ ‘ pregnancies of not more than 12 weeks shall be terminated by "each of them at the office ”. In June, 1971, Doctors Pearl-, man and Quint announced .the opening of ‘ ‘ their office for the practice of general, thoracic and vascular surgery” at the same 88 Ashford Avenue address. The exact size of the administrative, paramedical and nursing staff at the 88 Ash-ford Avenue office is not stated in the papers, nor do they contain any description of the physical layout or type and extent of medical equipment on the premises. Although a Dr. DeMartino of the State Health Department visited the office in October, 1971 and spoke with two of the physicians in the partnership, .an affidavit of Dr. DeMartino was not submitted to the court. A special investigator of the Attorney-General’s office did visit the office in January, 1972 but only observed the reception area in which 15 young women were waiting and the sign on the office door stating ‘ ‘ Dobbs Ferry Medical Pavillion ”. The investigator made certain inquiries of “two women wearing lab coats ” as to cost and method of the operation and then departed.
Defendant, Jerry Zucker, is alleged to be the administrator of the Dobbs Ferry Medical Pavillion clinic, but Mr. Zucker denies this, claiming only that he is “ employed by the doctors to assist in managing the office on a part-time basis ’ ’ but has no contact with patients seeking an abortion or other medical treatment. Furthermore, Mr. Zucker states that “ Dobbs Ferry Medical Pavillion” merely rents office space to the partnership under a lease made in June, 1971.
The administrative procedures and guidelines in regard to applications for approval of an abortion clinic, including the applicable State Hospital Code provisions (10 NYCRR 700.1 et seq.), were detailed in an affidavit submitted by Dr. William R. Donovan, the Regional Director of the Department of Health. The Public Health Council reviews such applications according to the standards established for an “ independent out-of-hospital health facility” (State Hospital Code, 10 NYCRR 700.2 [a] [6]). Some applications for approval of abortion clinics have already been submitted to the council and have *888 received licenses. However, although, copies of application forms were delivered to the Dobbs Ferry Medical Pavillion, Inc. by Dr. DeMartino, they have not been returned to the Department of Health.
ARGUMENT
The People contend that no “abortion clinic ”, such as the one allegedly being operated by defendants, can be ■ established without the written approval of the Public Health Council as required by subdivision 1 of section 2801-a. The fundamental issue is whether the facility operated by the defendant’s is a “hospital” within the meaning of subdivision 1 of section 2801 and, therefore, required to obtain the Public Health Council’s approval. The People insist that this action is a valid exercise of the State’s right to regulate to protect the general welfare.
Before turning to the defendants’ contentions, if should be appreciated that the resolution of the question before the court in no way relates to or hinges upon a value judgment as to abortions per se. The Legislature in its wisdom has determined that issue and the judiciary has reviewed and upheld the law as enacted (Byrn v. New York City Health & Hospitals Corp., 38 A D 2d 316). This clarification is necessitated as a result of a letter received from defendants after oral argument requesting that I disqualify myself from considering this matter because of a remark made during oral argument that although I was opposed to the present 24-week abortion law, I am duty bound to uphold the law and observe it. Because the issues here can be determined wholly apaft from any consideration of abortion per se, I have declined to step down. As pointed out by Mr. Justice Gulotta in his opinion, dissenting in part, in Byrn (supra, p. 332), “We all have our personal beliefs and a philosophy of life, but a Judge must apply the law as he finds it, whether it supports his beliefs or not”. That is my oath and I will not shrink from it.
Defendants argue the constitutionality of sections 2801 and 2801-a on two grounds; that the statutory definition of a “hospital ” is impermissively vague and thus the statute is void under the due process clause of the Fourteenth Amendment of the United States Constitution and the Constitution of the State of New York, and, secondly, that the statute is unconstitutional as applied in that it is being employed in a discriminatory manner depriving defendants of fundamental *889 personal and property rights in •contravention of the Fourteenth and Ninth Amendments of the United States Constitution.
Even assuming the constitutionality of these provisions, defendants argue that the facility is not a hospital but rather only a “ group ” practice in which three eminent physicians maintain their office. The defendants also argue that the .People have failed to demonstrate any real, substantial or irreparable harm to justify the drastic remedy of a preliminary injunction pending trial.
THE LAW
Subdivision 1 of section 2801, which defendants attack as unconstitutional, provides: “1. £ Hospital ’ means a facility or institution engaged principally in providing services by or under the supervision of a physician or, in the case of a dental clinic or dental dispensary, of a dentist, for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition including, but not limited to, a general hospital public health center, diagnostic center, treatment center, dental clinic, dental dispensary, rehabilitation center other than a facility used solely for vocational rehabilitation, nursing home, tuberculosis hospital, chronic disease hospital, maternity hospital, lying-in-asylum, out-patient department, dispensary and a laboratory or central service facility serving one or more such institutions, but the term hospital shall not include an institution, sanitarium or other facility engaged principally in providing services for the prevention, diagnosis or treatment of mental disability and which is subject to the powers of visitation, examination, inspection and investigation of the department of mental hygiene except for those distinct parts of such a facility which provide hospital service.”
In addressing the question of constitutionality of a statute, a court must proceed with utmost care, because a duly enacted statute carries with it a strong presumption of constitutionality, including a rebuttable presumption of the existence of necessary factual support for its provisions. Questions of wisdom, need or appropriateness are for the Legislature, and a court strikes down statutes the Legislature has enacted only as a last resort and only when unconstitutionality is shown beyond a reasonable doubt (Byrn v. New York City Health & Hospitals Corp., 38 A D 2d 316, supra). Cf no small import is the fact that the Public Health Law is a general statute relating to a matter of State concern (Fisher v. Kelly, 289 N. Y. 161, 166) and that the State has broad power to establish and enforce standards of *890 conduct within its borders relative to the health of everyone there (Barsky v. Board of Regents, 347 U. S. 442, 449).
However, a statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to the application .violates the first essential of due process of law (Connolly v. General Constr. Co., 269 U. S. 385, 391; Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690, 696). On the other hand, there is little doubt that imagination can conjure up hypothetical cases in which the meaning of certain terms will be a nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important (Communications Assn. v. Douds, 339 U. S. 382, 412). "Where the wording is sufficiently clear that any of the persons within its operative scope can clearly understand its meaning and effect, the constitutional requirement is fulfilled (People v. Cilento, 2 N Y 2d 55, 62). If the terms attacked for indefiniteness or vagueness have been long recognized in law and life, they will be considered sufficiently definite (Bellows v. Merchants Desp. Transp. Co., 257 App. Div. 15, affd. 283 N. Y. 581).
The pertinent terminology in section 2801 relating to the performance of abortions reads as follows: “ 1 Hospital ’ means a facility or institution engaged principally in providing services by or under the supervision of a physician * # * for the * * * treatment of * * * physical condition including, but not limited to * * * treatment center ’ ’.
That these terms are general should not be surprising in a statute of this nature. For further elucidation, the court must look to the State Hospital Code (Code) (10 NYCRR 700.1 et seq.). The People maintain that the alleged abortion clinic falls within the definition of an “ independent out-of-hospital health facility ” as defined in the Code (10 NYCRR 700.2 [a] [6]). That section provides: “ Independent out-of-hospital health facility shall mean an institution with one or more health clinics not part of an inpatient hospital facility or vocational rehabilitation center which is primarily engaged in providing services and facilities to out-of-hospital or ambulatory patients by or under the supervision of a physician, or in the case of a dental clinic or dispensary, of a dentist, for the prevention, diagnosis, or treatment of human disease, pain, injury, deformity or physical condition, including but not limited to a diagnostic center, treatment center or dispensary.”
*891 As was found in State of New York v. Mitchell (66 Misc 2d 514, 521) there is a definite coherence between the general language in section 2801 of the Public Health Law, and the Code (10 NYCKEt 700.2 [a] [6]). In fact, the substantial similarity in wording between the two leaves little doubt that a reasonable nexus exists and that the People’s reliance upon this particular definition of a medical facility, i.e., “ independent out-of-hospital health facility” is the appropriate and controlling Code provision insofar as an outpatient abortion clinic is concerned.
Unfortunately, the Code in this instance does not advance the inquiry on the issue of unconstitutional vagueness of the definition of a hospital. The Code confronts the inquirer with the same general terms found in section 2801. But the generality of the terms does not require in and of itself a finding of vagueness or indefiniteness.
Defendants ’ position is that their medical activities are simply a “ group practice ”, which the American Medical Association in 1965 defined in the following terms: “ The application of medical services by three or more full-time physicians formally organized to provide medical care, consultation, diagnosis, and for treatment through the joint use of equipment and personnel, with the income from medical practice distributed in accordance with methods previously determined by the group.” (Fishbein, Medical World News, March 17, 1972, p. 94).
Noteworthy is the similarity in terms — e.g., “ treatment ” — in the description of medical services in this definition and those in the Public Health Law and the Code. To that extent it cannot be said that people in or associated with the medical profession would be confused or lack a clear basis for understanding the terminology found in the Public Health Law or the Code.
Stripped of these common characteristics, it becomes evident that the Public Health Law and the Code definitions provide a criterion for determining the existence of a hospital as compared to group practice, which is found in the words 11 institution with one or more health clinics ”. The standard then is explicit and restrictive in its terms. A dictionary definition could refine the words if necessary, but even without resorting to a dictionary, the court is of the opinion that these words are generally recognized in law and life and that men of common intelligence would have little difficulty in appreciating their meaning. Moreover, a person in the capacity of a doctor or health administrator could be expected to understand the nature of the “ institution ” which would require the approval of the public *892 health council. Some support of this is found in the cases of People v. Wickersham Women’s Med. Center (69 Misc 2d 196) and People v. Seven East 68th Woman’s Pavilion (N. Y. County Sup. Ct., Index No. 40724/71) where the defendants admitted that their abortion facilities were hospitals within section 2801.
This conclusion is essentially the same result reached in Mitchell (supra, p. 521) where the court stated: 1 ‘ Under this wording it would seem that the category or definition of ‘ independent out-of-hospital health facility ’ as contained in the code is properly founded and refers to an institution with one or more health clinics. A doctor or group of doctors practicing in their own joint offices, each engaged in rendering professional medical services need not be concerned with being considered an institution ”.
The constitutional requirement of due process is, therefore, met by the Public Health Law definition of ‘ ‘ hospital ’ ’, in that it provides a sufficiently clear standard so as to eliminate a question of pure judgment and require in its stead a process of fact finding.
The affidavits of Robert B. Dorsen, M.D., a member of the group partnership, and Gerard A. Zucker, who denies being the clinic’s administrator, state that that corporation is no more than a lessor of the premises at which a “ group practice ” is being conducted, only one of whose medical services is the performance of abortions. On the other hand, the affidavit of a special investigator for the Attorney-General’s office, who visited the premises, tends to show that the Dobbs Perry Medical PaVillion is holding itself out as a corporation engaged in the performance of abortions independent of the alleged private practice conducted by the “group” of three doctors. The investigator’s inquiries by phone and during his visit to the premises were handled by staff personnel who stated that the “ pavillion’s doctors ” would perform the operation.
The authority of State of New York v. Mitchell (66 Misc 2d 514, supra), relied upon by the People for the proposition that defendants are an abortion clinic, is distinguishable, for, in that case, a hearing was held as to all the facts related to the abortion facility, which facts disclosed that a “referral service ” was actually in operation under the control of a layman. Whether the corporation herein is a “ referral service ” would be controlling, but that is not claimed by the People. Moreover, the essential facts relating to the ownership, management and control of the facility conducting the abortions, the manner and extent to which the facility holds itself out to the public, the *893 administrative procedures and volume of abortions conducted by the facility, the financial relationship and billing procedures of the corporate defendant and the individual doctors, and the existence of a true doctor-patient relationship before the court in Mitchell (supra), are not adequately covered on the papers and exhibits before this court. Although some of these aspects were discussed in oral argument, the court cannot accept unsworn statements of counsel as statements of fact.
Defendants also assert that they are being deprived of equal protection of the laws in that the Public Health Law is being administered “ with an evil eye and an unequal hand ” because of the fact that they perform abortions. Defendants’ support for this contention in their papers consists of a broad statement that other large “private group facilities” have not been required to obtain Public Health Council approval, the fact that some six months elapsed from the date when the Health Commission first learned of the existence of defendants’ operation before this proceeding was instituted, and the coincidence that this present suit was employed only after such cases as Robin v. Incorporated Vil. of Hempstead (38 A D 2d 758) and Kim v. Town of Orangetown (66 Misc 2d 364) were decided.
Such meager and bare assertions obviously fall far short of a prima facie showing of purposeful discrimination. Mere laxity in enforcement of a law does not become the basis of a denial of equal protection (16 Am. Jur. 2d, Constitutional Law, § 541). Nor is it sufficient to merely show that a law or ordinance has not been enforced against other persons as it is sought to be enforced against the person claiming discrimination (Snowden v. Hughes, 321 U. S. 1 [1944]; Mackay Tel. Co. v. Little Rock, 250 U. S. 94 [1919]).
The doctrine of Yick Wo v. Hopkins (118 U. S. 356 [1886]), relied on by defendants, reaches only intentional or purposeful discrimination, and this is the test applied in New York (Matter of Di Maggio v. Brown, 19 N Y 2d 283 [1967]). Di Maggio points out that although defendants have a ‘1 heavy burden ’ ’ of proof to sustain such an allegation, involving more than just mere nonenforcement against others similarly situated, they are entitled to have their day in court to attempt to factually demonstrate such intentional and purposeful discrimination. Consequently, despite the utter lack of substantiation in defendants ’ papers to support their charge, as was the case in Di Maggio, that authority- clearly mandates that defendants be afforded an opportunity to present any competent evidence they might have on the issue.
*894 Regarding Robin v. Incorporated Vil. of Hempstead (supra) and Kim v. Town of Orangetown (supra), those cases declared unconstitutional local zoning ordinances which sought to limit abortions to licensed and duly accredited hospitals. There is little doubt that, as stated in Kim (supra), the Legislature enacted a law free of restrictions as to where abortions could be performed and that an attempt by the Department of Health to circumvent the Legislature would be illegal and prohibited. Nevertheless, the mere fact that defendants are declared by the Commissioner of Health to be operating as a hospital without Public Health Council approval, absent a showing of ill-motivated intent, would not similarly violate the law, because such a determination does not impose a restriction as to where abortions may be performed.
The question remains whether a preliminary injunction pending trial of the action should issue. Section 2801-b provides that “ Notwithstanding any limitation of the civil practice law and rules ” the Supreme Court may enjoin a violation or threatened violation of any provision of article 28 of the Public Health Law or regulations adopted thereunder “upon proof that such violation is one which reasonably may result in injury to any person ”.
It is clear that a “ vital concern to the public health ” is in issue, for that is the Legislature’s own declaration in section 2800 of the/ Public Health Law. The complaint herein alleges ‘‘ that the illegal operation of an abortion clinic by defendants has resulted and is continuing to result in injury to the people of the State of New York”.
Defendants argue that a preliminary injunction should not be granted because the claim of harm to the public is not substantiated in any form and, indeed, could not be substantiated in this case because of the recognized qualifications of the three physicians involved, the low rate of complications among their patients and the People’s failure to take any action until six months after the office opened. In addition, defendants argue that no clear right to the relief demanded has been established and that upon weighing the “ relative hardships ”, the public need for an abortion facility should be given controlling weight.
The People have established a “ clear right ” to relief as this term is interpreted by the courts (Park Terrace Caterers v. McDonough, 9 A D 2d 113; 7A Weinstein-Korn-Miller, N. Y. Prac., par. 6301.18, and cases cited therein). As to the balancing of hardships, the limited public need for abortions is clearly subservient to the paramount public welfare requirement that *895 hospitals meet the prescribed standards of health determined by the State Health Commissioner.
Concerning the necessity of establishing injury or harm, section 2801-b requires as a basis for injunction only that a violation be one that “ reasonably may result in injury ”. The court is convinced that a sufficient showing of injury would be demonstrated for the purposes of this suit by the existence of a violation of the Public Health Law. Defendants’ rationalization of the existence of injury as a “low rate of complications” is ludicrous and arrogant. The cases of People v. Seven East 68th Woman’s Pavilion (N. Y. County Sup. Ct., Index No. 40724/71, Dollinger, J., decided June 21,1971; and People v. Wickersham Women’s Med. Center (69 Misc 2d 196, supra) have held that arguments based on performance records, special damages, clean and safe equipment and operations, are irrelevant where a violation exists.
“ What is in issue is whether defendant may continue to operate in admitted violation of statutes, the ultimate purpose of which is to protect the public. The answer must be no.” (People v. Seven East 68th Woman’s Pavilion, supra).
However, in those cases, the violation was admitted. Here, the violation is the very issue to be determined, one that was declared above to be not ascertainable on the basis of the affidavits before the court. In this proceeding, the relief requested is the ultimate relief sought. It is well established that a temporary injunction which grants all the relief that can be obtained by a party at the end of litigation is never granted unless it be made to appear clearly to the court that the plaintiff’s contention is so clearly right that summary judgment is proper (Graham v. Board of Supervisors of Erie County, 49 Misc 2d 459, mod. 25 A D 2d 250, appeal dsmd. 17 N Y 2d 866; Allied-Crossroads Nuclear Corp. v. Atcor, Inc., 25 A D 2d 643; Way v. Hayes, 124 N. Y. S. 648 [Sup. Ct., Ulster County, 1910]). Consequently, a preliminary injunction is not available to the People.
The public interest and welfare must be protected, however, and the court orders that the matter be given a preference and set down for an immediate hearing and determination at Special Term, Part III-A, of this court for the May 1 Term and marked peremptorily against both the People and the defendants, subject to further order of the Justice then presiding.
The following issues are referred for determination:
(1) Do the defendants maintain an “ institution with one or more health clinics ” for the performance of abortions in violation of the Public Health Law?
*896 (2) Have sections 2801, 2801-a and 2803 of the Public Health Law been applied against defendants in an intentionally and purposefully discriminatory manner and not applied against others similarly situated?