■    In the Matter of the CITY OF WHITE PLAINS, Respondent, v. GENNARO FERRAIOLI et al., Appellants.— In an action to enjoin defendants from using a one-family residence in the City of White Plains for purposes other than as permitted in an "R-2 District" under the city's Zoning Ordinance, defendants appeal from a judgment of the Supreme Court, Westchester County, dated June 29, 1972, which granted plaintiff's motion for summary judgment and enjoined defendants from using the subject premises as a "group home", etc., pursuant to title 1 of article 6 of the Social Services Law, in an "R-2 District" (one-family residential), but stayed enforcement of the judgment pending application by defendants to the Zoning Board of Appeals of the City of White Plains within a specified time for a special permit in accordance with the city's Zoning Ordinance. Judgment affirmed, without costs. No opinion. Enforcement of the judgment is hereby further stayed until 30 days after entry of the order to be made hereon, to allow defendants time within which to apply to the Zoning Board of Appeals for a special permit. Rabin, P. J., Munder, Latham and Christ, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment, to deny plaintiff's motion and to grant summary judgment to defendants dismissing the complaint, with the following memorandum: I am in complete agreement with appellants' contention that if the definition of "family" contained in the Zoning Ordinance of the respondent City of White Plains is not construed as including a "group family" as that term is defined in subdivision 17 of section 371 of the Social Services Law and a "foster parent" as those words are defined in subdivision 19, the Zoning Ordinance would be void for invidious discrimination. The majority of this court, in distinguishing our decision in *Abbott House* v. *Village of Tarrytown* (34 A D 2d 821), is, in my opinion, drawing a distinction where there is no difference. In *Abbott* we held that the Tarrytown Zoning Ordinance was void because it totally barred group homes anywhere within the environs of the

Village of Tarrytown. We there said: " We are therefore of the opinion that the Tarrytown Zoning Ordinance, insofar as it *conflicts and hinders* an over riding State law and policy favoring the care of neglected and abandoned children, is void as exceeding the authority vested in the Village of Tarrytown " (p. 822; italics supplied). In this case the appellant city has eight zones, in some of which there are no restrictions against group homes. However, it is the contention of the city that in the one-family zone with which we are here concerned defendants have no absolute right to maintain a group home and may do so only if they obtain a special permit from the city's Zoning Board of Appeals. To compel application for special permission — which may or may not be granted — by persons seeking to occupy premises in a one-family residential zone as a group home clearly "*hinders* an over-riding State law and policy favoring the care of neglected and abandoned children" as that interest is set forth in the Social Services Law. However, I do not rest my dissent merely on the foregoing, because I believe that in view of the elaborate and comprehensive provisions contained in the Social Services Law the State has fully pre-empted the field, leaving no room (except for very limited police powers) to the local communities to restrict the areas, within their geographical boundaries, where group homes may be located. Section 374-e of the Social Services Law, which is headed "Authority to enter into leases for dwelling units", provides, *inter alia*, that "*Any inconsistent provisions of*" that statute "*or any other law notwithstanding,*" a public welfare official authorized to operate group homes is empowered "to rent or lease dwelling units in his capacity as a public welfare official, as lessee, in any federal project, state project or municipal project * * * or in any municipally-aided project or state-aided project, or other project * * * *or elsewhere,* for the purpose of operating therein" such group homes, and is empowered to contract with individuals for their services in conducting such homes and caring for children or minors placed in such homes (italics added). It thus seems clear that "any other law notwithstanding", and plaintiff's local zoning law is such a law, the Public Welfare Department has an absolute right "to rent or lease dwelling units" anywhere in the State for group homes, unhindered by any limitations sought to be imposed by any local unit of government. Section 377 of the Social Services Law provides for a visit by the Public Welfare Department to "inspect" the premises for which a license is requested. Subdivisions 1 and 5 of section 378 provide for the issuance of certificates or licenses for the keeping of the children in such homes if they are found "suitable" and authorize the State Board of Social Welfare to prescribe standards "for the care of children and/or minors received under such licenses and certificates. " Under the rules and regulations promulgated by the Board of Social Welfare with respect to group homes it is required that "The group home shall be in an appropriate neighborhood" where suitable outdoor play areas are readily available to the children (18 NYCRR 11.3 [d] [1]). The only limitation that I can find on the right or power of the Department of Welfare to decide on the use, *but not the locale,* of a building or a group home is that "where there are local building and fire authorities, evidence of approval by such authorities" must be first obtained (18 NYCRR 11.5 [a] [3]). From the foregoing and other specific provisions in the Social Services Law as to where and under what circumstances group homes may be maintained it seems to me that the State has taken hold of this entire problem and has pre-empted the right of any local government to make any laws inconsistent therewith (*Robin* v. *Incorporated Vil. of Hempstead,* 30 N Y 2d 347; *Wholesale Laundry Bd. of Trade* v. *City of New York,* 17 A D 2d 327, affd. 12 N Y 2d 998;

*Kindermann Fireproof Stor. Warehouses* v. *City of New York,* 39 A D 2d 266)
*In Robin (supra),* dealing with the applicable law when there has been an expression of State policy, the court said (pp. 350–351) : " Such State policy being expressed, a village or other municipality lacks authority to deal with the matter ' " unless it is specifically empowered so to do in terms clear and explicit." ' (*Matter of Kress & Co.* v. *Department of Health,* 283 N. Y. 55, 60; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury,* 230 App. Div. 228, 234, affd. 256 N. Y. 619; see *Kim* v. *Town of Orangetown,* 66 Misc 2d 364, 372, *supra.*) As is manifest, no such clear and explicit authority exists in the case before us." In *Whoesale Laundry (supra),* the court said (p. 330) : " Furthermore, it is entriely clear that the State law indicates a purpose to occupy the entire field. And where this is found, local laws are prohibited ". In *Kindermann (supra),* the court said (p. 269) : " Furthermore, the power of a municipality to enact legislation in a field covered by State legislation is limited to. such legislation as is consistent with the State legislation. The municipal legislation must be supplementary and not proscribe anything permissible under State law, nor allow anything forbidden by State law (*Wholesale Laundry Bd. of Trade* v. *City of New York,* 12 N Y 2d 998; *People* v. *Lewis,* [295 N. Y. 42] *supra*)." Since the only issue before the court is one of law and the judgment appealed from was entered on plaintiff's motion for summary judgment, I vote to reverse the judgment and to grant summary judgment to defendants dismissing plaintiff's complaint notwithstanding their failure to move for such relief (CPLR 3212, subd. [b]).