CHARLES ROBIN, Appellant, v. INCORPORATED VILLAGE OF HEMPSTEAD, Respondent. (Action No. 1.) INCORPORATED VILLAGE OF HEMPSTEAD, Respondent, v. BILL BAIRD CENTER, INC., Appellant. (Action No. 2.) — In two consolidated actions (Action No. 1 is for a declaratory judgment that a certain ordinance of the defendant village is invalid and Action No. 2 is for an injunction against violation of the ordinance), plaintiff in Action No. 1 and defendant in Action No. 2 appeal from a judgment of the Supreme Court, Nassau County, entered October 27, 1971 after a nonjury trial, which declared the ordinance valid and which enjoined said plaintiff and said defendant from violating the ordinance. Judgment reversed, on the law, with costs; complaint in Action No. 2 dismissed; and ordinance declared invalid and void. The findings of fact below are affirmed. Effective July 1, 1970 the Legislature amended the Penal Law to provide that an abortional act is justifiable "when committed upon a female with her consent by a duly licensed physician acting ＊ ＊ ＊ within twenty-four weeks from the commencement of her pregnancy" (L. 1970, ch. 127; Penal Law, § 125.05, subd. 3). On March 17, 1971 the Incorporated Village of Hempstead enacted an ordinance which provides that a justifiable abortion shall be performed only in a hospital duly licensed and accredited by the New York State Department of Health and having equipment and facilities acceptable to the State Hospital Review and Planning Council. The validity of that ordinance is in issue on this appeal. As conceded by appellants, there is a reasonable basis for finding that abortions, whatever the duration of the pregnancy, may more safely be performed in hospitals where extensive medical facilities are readily available. Thus, it would be well within the police power of the State to impose such a restriction. In our opinion, however, the enactment of this ordinance was outside the scope of the powers of a village. It is axiomatic that municipal corporations are creatures of the State and have only such powers and authority as are delegated by the State and as are necessarily incident thereto (*Whittaker* v. *Village of Franklinville,* 265 N. Y. 11, 14). The State has not conferred the power upon a village to enact an ordinance of this kind. The village bases its authority upon subdivision 59 of section 89 of the Village Law, which provides that the board of trustees of a village: "May take all measures, do all acts and enact any ordinances, not inconsistent with existing law which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, safety and health of its inhabitants ＊ ＊ ＊ and may generally exercise all the powers granted to the village." This language, taken at face value, does authorize the enactment of this ordinance. However, a statute of this type is not construed in such manner. A general welfare or grant of power clause is not a delegation to a municipal corporation of the entire police power of the State, but is limited to matters of an inherently local nature (6 McQuillin, Municipal Corporations [1969 revised ed.], § 24.45). "General powers should be interpreted with respect to the purposes of the incorporation, and,

a general grant must be construed as conferring no other powers than such as are within the ordinary scope of municipal authorities or which are necessary to accomplish municipal purposes. * * * If a charter, statute, or constitutional provision, in defining the powers of a municipal corporation, enumerates certain things which it may do by words of particular and specific meaning, and such enumeration is followed by general words, the general words are not to be taken in their widest sense, but are restricted to things of the same general kind as those enumerated, unless the contrary intent appears" (62 C.J.S., Municipal Corporations, §§ 120, 121). Examination of the 76 subdivisions of section 89 of the Village Law reveals that the power sought to be exercised herein is not of the same general kind as those specifically delegated in that section. The provisions of the section relating to health deal with sewerage and water supply; disposal of garbage and ashes; removal of rubbish from private property; removal of fire and health hazards; smoke and noxious gases; supervision of milk, meats, fish and poultry; and provision of health service facilities. The regulation of the practice of medicine, and ·there can be no doubt that such is the effect of this ordinance, is not a matter of an inherently local nature and has never, as far as we can perceive, been considered to fall under the authority of the village level of government. The health concerns of a village government have traditionally been considered to, be limited to such matters as infectious disease, impure water and food, and nuisances injurious to health. The State has retained unto itself the power to regulate the practice of medicine (Education Law, arts. 130, 131; see, generally, Public Health Law). It must be concluded that the power to enact this ordinance has not been conferred upon the village either directly or by implication. While the village bases its authority solely upon the legislative power of its board of trustees and not upon any power of the board to act as a local board of health, it may be noted, in any event, that local boards of health have been abolished in Nassau County, the county having reserved such authority to itself (Nassau County Govt. Law [Nassau County Charter], § 904; L. 1936, ch. 879, as amd.). Latham, Acting P. J., Shapiro, Gulotta and Christ, JJ., concur.