HON. RAYMOND F. LOUCKS County Attorney, Schenectady County
This is in response to your letter wherein you refer to an informal opinion of the Attorney General dated February 16, 1977, which concluded in substance that the County of Schenectady is not authorized to enact a local law to provide that the duties of the Board of Managers of the Schenectady County Hospital would be limited to act solely in an advisory capacity to the County Manager regarding the overall operation of the Hospital. You now ask for a supplementary opinion of the Attorney General relating to the following question:
 "Is a provision in the Schenectady County Charter adopted by referendum providing for appointment by the County Manager of members of the Board of Managers of Glenridge Hospital, a public general hospital, invalid?"
You state your concern about the status of the present members of the Board of Managers of Glenridge Hospital (a public general hospital) in the event our answer to your question should be in the affirmative.
Your opinion request of February 7, 1977, on the basis of which our opinion of February 16, 1977 was issued, pointed out that presently the County operates the Hospital as a public general hospital under provisions of General Municipal Law, Article 6 and that the Hospital had previously been operated as a tuberculosis hospital under provisions of County Law, Article 7 until its accreditation as a public general hospital after the enactment of the Schenectady County Charter. (Said Charter became effective pursuant to Schenectady County Local Law No. 1 of 1965 which became a law November 2, 1965 with the approval of the qualified electors of the County of Schenectady.)
Schenectady County Charter, § 14.01, provides as follows:
 "Schenectady county hospital facilities, except those under the supervision of the county department of social welfare as provided in article XIII of this charter, shall be administered and maintained under the supervision of a board of managers. The board of managers shall be appointed by the county manager, subject to confirmation by the board of representatives, in manner and number according to the administrative code." (Emphasis supplied.)
General Municipal Law, § 127(1), provides in pertinent part:
 "1. Except as provided in subdivision two, when a governing board of a county * * * shall have determined to establish a public general hospital for the care and treatment of the sick, the board of supervisors of the county * * * shall appoint not less than five and not more than fifteen citizens of the county * * * who shall constitute a board of managers of the said hospital. The term of office of each member of said board shall be five years * * *."
The conclusion reached in the opinion of February 16, 1977 was premised on the language of General Municipal Law, § 134 (added Laws 1910, chapter 558; amended Laws 1922, chapter 265) and Robin v. IncorporatedVillage of Hempstead, 38 A.D.2d 758 (2d Dept., 1972), affd. 30 N.Y.2d 347.
General Municipal Law, § 134, provides in pertinent part:
 "* * * Any public general hospital which may hereafter be established by any governing board of any county, town, city or village shall be subject to all the provisions of sections one hundred and twenty-six to one hundred and thirty-four, inclusive, of this chapter." (Emphasis supplied.)
In Robin v. Incorporated Village of Hempstead, 38 A.D.2d 758 (2d Dept., 1972), affd. 30 N.Y.2d 347, the Court held that a village or other municipality lacks authority to deal with the matter of abortion unless such municipality is specifically empowered to do so in terms clear and explicit. Chief Judge Fuld speaking for the Court stated:
 "* * * the State's purpose and design to preempt the subject of abortion legislation and occupy the entire field so as to prohibit additional regulation by local authorities in the same area. (See, e.g., Good Humor Corp. v. City of New York, 290 N.Y. 312, 316-317; People v. Lewis, 295 N.Y. 42, 51; Wholesale Laundry Bd. of Trade v. City of New York, 17 A.D.2d 327, 330, affd. 12 N.Y.2d 998; Kim v. Town of Orangetown, 66 Misc.2d 364, 370-371.)
 "Such State policy being expressed, a village or other municipality lacks authority to deal with the matter `"unless it is specifically empowered so to do in terms clear and explicit." `(Matter of Kress Co. v. Department of Health, 283 N.Y. 55, 60; Jewish Consumptives' Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 234, affd. 256 N Y 619; see Kim v. Town of Orangetown, 66 Misc.2d 364, 372, supra.) As is manifest, no such clear and explicit authority exists in the case before us."
In the opinion of February 16, 1977, we further noted:
 "The field of public general hospitals has been covered in great detail in General Municipal Law, Article 6. That fact, together with the language of section 134 contained in said Article and the holding of Robin v. Incorporated Village of Hempstead, supra, leads to the conclusion that the subject of public general hospitals has been preempted by the State of New York and a municipality is prohibited from legislating in that field. We are aware of General Municipal Law, § 129-a, which provides:
 "`In the county of Erie, the county executive when authorized by the charter may appoint the county hospital superintendent and the county hospital board of managers for terms as are specified in such charter. Such charter may provide that the powers of such board of managers may be advisory only in which event the powers now granted by statute to such board shall be vested in the superintendent.' (Emphasis supplied.)
We now conclude that absent such enabling act of the State Legislature the provisions of General Municipal Law, § 127(1) providing that the board of managers of a county public general hospital be appointed by the board of supervisors prevails over Schenectady County Charter, § 14.01 which vests such power in the County Manager subject to the confirmation of the Board of Representatives. The fact that the Schenectady County Charter was enacted by a referendum does not alter this conclusion.
We call to your attention the definition of the term "Board of Supervisors" in section 32 of Article 4 (Part 1-The County Charter Law) contained in the Municipal Home Rule Law, which section provides as follows:
 "For the purposes of this part, the following terms shall mean and include:
 "1. `Board of supervisors.' The board of supervisors or other elective governing body of a county."
The present members of the Board of Managers of Glenridge Hospital that have been appointed by the County Manager are de facto officers and their official acts are valid.
In Dolan v. Mayor, 68 N.Y. 274 (1877), it was stated in part:
 "* * * the fact that an appointment to a public office was illegally made, does not ipso facto deprive the person appointed of the character of a de facto
officer. In Wilcox v. Smith (5 Wend., 234), the general proposition is asserted that an individual coming into office by color of an election or appointment, is an officer de facto, although his election or appointment was illegal. And in Parker v. Baker (8 Paige, 428) the chancellor refused to inquire into the legality of the appointment of a commissioner of deeds, by the governor and senate, when the question arose collaterally, on the ground that he was by virtue of the appointment, and the discharge of the duties of the office, an officer de facto. (See, also; 2 Kent, 295; People v. Collins, 7 J.R., 549; People v. Dean, 3 Wend., 438; People v. White,
24 id., 540; Morris v. People, 3 Den., 381.)
* * *
 "It is well-settled that the acts of an officer de facto are valid so far as they concern the public or the rights of third persons who are interested in the things done. (People v. Hopson, 1 Den., 574, and cases cited.) `Society,' says BRONSON, C.J., in that case, `could hardly exist without such a rule.' The principle is, that those dealing with officers clothed with an apparent title should be protected, and that they should not be compelled to go beyond that and trace the title to its source. * * *"
3 McQuillin, Municipal Corporations [3d ed. rev.], § 12.102 (p. 445), considered an authoritative work in the field of municipal law, comments on de facto officers as follows:
 "Where one is actually in possession of a public office and discharges the duties thereof, the color of right which constitutes him a de facto officer may consist in an election or appointment, holding over after the expiration of his term, or by acquiescence by the public for such a length of time as to raise the presumption of a colorable right by election, appointment, or other legal authority to hold such office. The duties of the officer are exercised under color of a known election or appointment which is void for want of power in the electing or appointing body, or for some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.
 "Where there is an office, all that is required to make an officer de facto is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. * * *" (Emphasis supplied.)
From all of the foregoing, we conclude that the provisions of General Municipal Law, § 127(1) providing that the board of managers of a county public general hospital be appointed by the board of supervisors prevails over Schenectady County Charter, § 14.01 which vests such power in the County Manager subject to the confirmation of the Board of Representatives. All authorized acts of said Board of Managers previously appointed by the County Manager are valid since members of said Board are serving as de facto officers.